WALTER OAKES, Plaintiff-Appellant, *v.* ALBERT GAINES, Indiv. and d/b/a Theatrical Services Company, Defendant-Appellee.

First District (4th Division)    No. 81-1566

Opinion filed June 3, 1982.

James J. Reidy, Ltd., of Chicago (William A. Murphy, of counsel), for appellant.

Conklin and Adler, Ltd., of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Walter Oakes, and the defendant, Albert Gaines, were employees of the Chicagoland Commerce & Industry Exposition (Chicagoland). Oakes was injured during the course of a show put on by Chicagoland and brought an action against Gaines alleging both negligence and violations of the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*). Gaines contended that as a co-employee he was immune from liability under section 5(a) of the Illinois Workmen's Compensation Act, which bars personal injury suits against co-employees. (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a).) Oakes contends that at the time of the injury Gaines was acting in a capacity other than that of a co-employee and that he was suing Gaines in that separate capacity. This theory has been referred to as the dual capacity doctrine, and was applied recently by the Illinois Supreme Court in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524. The trial court granted Gaines' motion for summary judgment and Oakes brought this appeal. The focus of our attention is on whether Oakes' injury was caused by the conduct of Gaines as an employee of Chicagoland or in his separate capacity involving their common employer, Chicagoland.

Oakes is a sound technician and stagehand and was hired by Chicagoland to operate equipment during the course of the show. He worked

from a sound booth located above and behind the bleachers from which the audience viewed the show. He would get to this booth by way of a ladder and was injured while ascending the ladder. The ladder had "Al Gaines" written on it in large letters. The ladder and its placement are the only connections between Gaines and his alleged dual capacity.

Gaines was hired by Chicagoland as a technical director. As such, he was a co-employee of Oakes. His alleged dual capacity stems from two apparently separate occurrences. First, Gaines is the sole owner of Theatrical Services Company, which is in the business of designing and building theatrical productions. In May of 1976, Theatrical Services entered into a contract with Chicagoland whereby Theatrical Services would transform a barge into a floating stage. Essentially, the contract provided that Theatrical Services would construct and install in the barge a stage floor and scaffolding. The stage floor and scaffolding would remain in the barge from June 19, 1976, through July 18, 1976, when Theatrical Services would restore the barge to its original condition. The contract further provided that Theatrical Services would repair and maintain the stage and scaffolding to keep them in first class operating condition throughout this period. After Theatrical Services delivered the barge with the stage constructed, Gaines was hired by Chicagoland through the stagehands' union as the technical director of the show. The union records regarding this job indicated that Gaines and the plaintiff Oakes were on the same payroll at the time of Oakes' injury.

The second occurrence which Oakes uses to support his allegations of Gaines' dual capacity involves an arrangement between Chicagoland and Gaines whereby Gaines purchased construction materials and bunting for Chicagoland. The record shows that Theatrical Services sent a series of invoices to Chicagoland during the course of the show which billed Chicagoland for bunting and construction materials. According to Gaines' deposition, construction on the barge was completed by Theatrical Services before any work was done by the union stagehands. Gaines stated that Theatrical Services received no remuneration for work performed in constructing the booths and bleachers where the plaintiff's injuries occurred. He explained that he obtained the bunting and construction materials for Chicagoland as a matter of convenience because he was familiar with the suppliers. Gaines was then reimbursed by Chicagoland. Theatrical Services realized no profit or benefit from the acquisition and supply of this equipment.

The dual capacity doctrine has been used to allow suits by employees against employers which would normally be barred by section 5(a) of the Workmen's Compensation Act. A suit may be brought against an employer if he occupies, in addition to his capacity as an employer, a second capacity that confers on him obligations independent of those imposed on

him as an employer. (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524.) For example, in *Smith* the plaintiff employee was allowed to maintain a strict liability claim against the defendant, one of two members of the joint venture which employed the plaintiff, for injuries caused by an allegedly defective truck leased by the defendant-employer to the joint venture. In *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512, the plaintiff employee was allowed to bring a Structural Work Act claim against his employer, a contractor, in.the employer's second capacity as a member of a partnership which had charge of the work performed by the plaintiff.

Although these cases involve attempts by an employee to sue his employer in a separate capacity, in the cause before us the plaintiff is attempting to sue a co-employee in a separate capacity. The defendant, relying on *McCormick v. Caterpillar Tractor Co.* (1980), 82 Ill. App. 3d 77, 402 N.E.2d 412, *aff'd in part, rev'd in part* (1981), 85 Ill. 2d 352, 423 N.E.2d 876, makes the assertion that the dual capacity doctrine cannot be applied in a situation involving an employee suing a co-employee.

In *McCormick*, the plaintiff brought suit against his employer and medical practitioners hired by his employer to recover for malpractice by those practitioners in treating him for a job related injury. Apparently, the employer chose to furnish the medical treatment through its own employees rather than pay outside doctors to do it. The court, applying the dual capacity doctrine, held that by furnishing medical treatment the employer was acting in a separate capacity from its capacity as an employer. However, it found that the individual medical practitioners were still the plaintiff's "co-employees" within the meaning of section 5(a) of the Workmen's Compensation Act and as such were entitled to statutory immunity from the plaintiff's suit. In coming to this conclusion, the court stated that there was no indication by the Illinois Supreme Court in *Smith v. Metropolitan Sanitary District*, where it recently applied the dual capacity doctrine, that the co-employee immunity should be waived "merely because an employee might be serving an employer in a capacity different than that of another employee whom he might injure." (*McCormick v. Caterpillar Tractor Co.* (1980), 82 Ill. App. 3d 77, 80, 402 N.E.2d 412, 415.) The implication in *McCormick* is that where an employer occupies two capacities and hires employees in each of its capacities, the employees are "co-employees' within the meaning of section 5(a) and as such are entitled to the immunity provided for in that statute. The Illinois Supreme Court subsequently reversed the appellate court's application of the dual capacity doctrine in *McCormick*, holding that the employer was not acting in a separate capacity when it furnished medical services to the plaintiff. (*McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, 423 N.E.2d 876.) However, since no petition for

leave to appeal was filed as to the dismissal of the individual co-employees, the court did not consider the appellate court's holding on the issue which we are considering. Here, Oakes is not attempting to avoid the immunity provision by asserting that Gaines was hired by Chicagoland while Chicagoland was acting in a dual capacity. Rather, Oakes is alleging that Gaines himself was acting in two capacities, that of a technical director and that of an independent contractor doing business with Chicagoland. We do not believe that the *McCormick* case in every situation bars employees from bringing actions against co-employees.

■■ The cases in which the dual capacity doctrine has been applied establish that the plaintiff in this type of case must meet two requirements. First he must show that the defendant acted in two separate capacities. For example, the plaintiff in *Marcus*, who was employed as a carpenter by the defendant contractor, had to show that the defendant occupied another capacity as a member of a partnership which had charge of the work. In *Smith*, the plaintiff had to show that the defendant employer occupied another capacity, that of an independent business leasing trucks to the joint venture. Applying this requirement to the instant cause, Oakes must show that Gaines occupied a separate capacity in addition to his capacity as a technical director. In other words, he had to show that Gaines occupied the status of an independent contractor providing services to Chicagoland other than those which he provided as a technical director.

The second thing that the plaintiff must show in order to trigger the dual capacity doctrine is that he was injured as a result of activities performed by the defendant while the defendant was engaged in its second capacity. In *Marcus*, the plaintiff had to show that he was injured because the defendant breached duties arising out of his capacity as a member of a partnership which had charge of the work performed by the plaintiff. Similarly, in *Smith*, the plaintiff was required to establish that the defendant breached duties arising out of his capacity as the lessor of an allegedly defective truck. Thus, in the instant cause, Oakes must show that his injuries were occasioned by Gaines while Gaines was performing acts connected to his separate capacity as an independent contractor.

■■ Although Oakes was able to meet the first requirement of showing that Gaines occupied two capacities in his relationship with Chicagoland, he failed to meet the second requirement of showing that Gaines was acting in his capacity as an independent contractor when he performed the acts which allegedly caused Oakes' injuries. The facts before the trial court did not establish that Gaines' activities, which the plaintiff alleges create a basis for liability, were in any way related to his activities as an independent contractor in constructing a stage on the barge or in purchasing materials for Chicagoland. The evidence established that the con-

tract between Theatrical Services and Chicagoland called for the construction of a stage floor and scaffolding and did not include construction of the sound booth where the plaintiff was injured. Gaines' affidavit states that Theatrical Services' part in the construction was completed before any work was done by the union stagehands. The plaintiff's own deposition corroborated this when he stated that the construction of the sound booth was performed by union stagehands and not by the same men employed by Theatrical Services to do the earlier construction work. There is nothing to suggest that Theatrical Services was in any way involved in the ongoing construction.

In conclusion, Oakes' cause of action must fail because it does not show that Gaines performed the acts which caused Oakes' injuries while acting in a capacity independent of and separate from his capacity as that of co-employee. The only pertinent allegation is that the ladder on which Oakes was injured was Gaines' ladder. There is no showing that this ladder was related to Gaines' other capacity.

For the foregoing reasons, the judgment of the circuit court is affirmed.

JOHNSON, P. J., and LINN, J., concur.