LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

George H. CALHOUN, et al., Defendants.

Civ. A. No. C–2–80–559.

United States District Court, S.D. Ohio, E.D.

Sept. 6, 1983.

Robert Tait, Columbus, Ohio, for plaintiff.

James H. McNenny, Newark, Ohio, Charles N. Myers, Jr., Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This case was set for jury trial on August 15, 1983. Following the close of plaintiff's case, defendants George and Marian Calhoun moved for a directed verdict raising many of the legal issues which had previously been raised through motions for summary judgment. The Court reserved ruling on defendants' motions at that time until it had heard all of the evidence in the case. Thereafter, the Court, having heard all the evidence in the case, concluded that defendants' motion was well taken. As per the Court's promise to the parties at that time, the reasons for the Court's decision directing a verdict in the defendants' favor are set forth more fully below.

## I

### A. Statement of Facts

This is a negligence action in which plaintiff Liberty Mutual claims that its insured, Mr. Alfred Van Benschoten, was injured as a direct and proximate result of defendants' negligence in the care and maintenance of a porch outside their home. At the time of the accident in July of 1978, which is the subject of this lawsuit, it is uncontroverted that George Calhoun and Mr. Van Benschoten were both employees of the American Baptist Churches USA. Defendant Marian Calhoun was co-owner of the home in which plaintiff's insured was injured but was not home at the time of the accident nor for that matter was Mrs. Calhoun aware that the Van Benschotens would be visiting her home that day.

The evidence adduced at trial unquestionably indicated that while Mr. Van Benschoten was at the home of the Calhouns he stepped out onto a wooden deck located at the rear of the defendants' home. The evidence further indicated that Mr. Van Benschoten fell from the porch and suffered serious physical injuries as a result of that fall. Finally, it is undisputed that following this accident, plaintiff Liberty Mutual paid Mr. Van Benschoten a sum of money to cover expenses incurred as a result of this injury. This payment was made in accordance with Pennsylvania's Workmen's Compensation Act and resulted in Liberty Mutual being subrogated to any rights and claims Mr. Van Benschoten had against defendants George and Marian Calhoun.

### B. Statement of Issues

On the basis of these facts, plaintiff Liberty Mutual sued defendants George and Marian Calhoun alleging that as a direct result of defendants' negligence, Mr. Van Benschoten received injuries in the course and scope of his employment when he fell from a porch at the home of the defendants.

Defendants contend that because plaintiff has previously recovered Workmen's Compensation and because plaintiff and defendant George Calhoun were fellow servants, the fellow servant or employee immunity statute of either Pennsylvania or Ohio bars recovery in this case. The question of whose law governs in this case is one which the Court need not address since the parties agree that the law of Ohio and Pennsylvania are the same in this case. It is undisputed that the Ohio Workmen's Compensation statute bars suit against a fellow employee, R.C. 4123.741 as does the Pennsylvania Workmen's Compensation Statute, 77 P.S. § 72.

With respect to Mrs. Calhoun, who is not a fellow employee, defendants contend that Mr. Van Benschoten's relationship to Mrs. Calhoun was that of a social guest and that accordingly she is not liable to Mr. Van Benschoten.

In response to defendants' arguments, plaintiff Liberty Mutual contends that while the fellow servant immunity statute would normally bar plaintiff from recovering from defendant George Calhoun, the dual capacity doctrine exception is applicable in this case. Moreover, plaintiff contends that Mr. Van Benschoten was a business invitee of Mrs. Calhoun either because Mrs. Calhoun was the co-owner of the property or because Mrs. Calhoun was the wife of Mr. Calhoun and it is undisputed that Mr. Van Benschoten was a business invitee of Mr. Calhoun.

As the parties are no doubt aware and as the Court is certainly aware, resolution of the legal issues in this case has not been easy. Nonetheless, the Court concludes that fellow servant immunity bars plaintiff's suit against George Calhoun and that Mrs. Calhoun incurred no liability to Mr. Van Benschoten who was little more than a social guest as to her.

## II

### A. Dual Capacity Doctrine

Initially the Court notes that plaintiff concedes that were it not for the dual capacity doctrine, plaintiff's suit on behalf of the injured Mr. Van Benschoten would be

barred by the fellow servant immunity doctrine. The only issue this Court must decide, therefore, is whether the dual capacity doctrine applies to the facts of this case.

The so-called dual capacity doctrine was first discussed and adopted by the Supreme Court in *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978). Since that time the doctrine has been the subject of a number of judicial renderings. The doctrine, while easily restated, has nonetheless proven difficult to apply. Rather simply stated, the dual capacity doctrine provides that

> An employer [or fellow employee] may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona *so completely independent from and unrelated to his status as employer* that by established standards the law recognizes ... a separate legal person.

*Guy v. Thomas, supra,* at 186, 378 N.E.2d 488; *see also* 2A Larson *Workmen's Compensation Law,* § 72.81 (1982). An employer or co-employee will become liable in tort therefore, if he or she occupies a second capacity that confers on him obligations independent of those imposed upon him by virtue of the employment relationship. *Mercer v. Uniroyal,* 49 Ohio App.2d 279, 285, 361 N.E.2d 492 (1976); *Knous v. Ridge Machine Co.,* 64 Ohio App.2d 251, 255, 413 N.E.2d 1218 (1979). Stated yet another way, some courts, in the analysis and determination of the existence of the dual capacity relationship have expressed the test as being whether the employment relationship is incidental or predominates in the circumstances surrounding the incident giving rise to the complaint. *See, e.g., Kottis v. United States Steel Corp.,* 543 F.2d 22 (7th Cir.1976); *Oakes v. Gaines,* 107 Ill.App.3d 212, 63 Ill.Dec. 89, 437 N.E.2d 738 (1st Div. 1982); *Duprey v. Shone,* 39 Cal.2d 781, 249 P.2d 8 (1952).

Regardless of what forms of expression are used to define this doctrine, it is clear that the doctrine was merely intended to create a limited exception to the exclusivity principle underlying Workmen's Compensation.[1] *See McNeil v. Diffenbaugh,* 105 Ill. App.3d 350, 61 Ill.Dec. 224, 434 N.E.2d 377 (1st Div. 1982); *Oakes v. Gaines,* 107 Ill. App.3d 212, 63 Ill.Dec. 89, 437 N.E.2d 738 (1st Div.1982).

In this case, plaintiff Liberty Mutual, in arguing the applicability of the dual capacity doctrine, has contended throughout these proceedings that plaintiff was injured as a result of defendant George Calhoun's negligence in maintaining his property. Plaintiff further theorizes that as a landowner, defendant Calhoun had an independent duty to all those invited on his property. Plaintiff, in essence, contends that it is defendant's status as a landowner that may be viewed as a second capacity independent from any employment relationship that existed between Mr. Van Benschoten and defendant George Calhoun.

As the Court noted at trial, counsel for the plaintiff should be commended for their attempt to creatively apply a newly-evolving doctrine of law. Nonetheless, the Court must reject plaintiff's contention since the Court is unpersuaded that Mr. Van Benschoten's status as a business visitor, or stated another way, defendant George Calhoun's status as owner of land, permits plaintiff to circumvent the policy of exclusivity underlying Worker's Compensation or the policies underlying the fellow servant immunity rule.

More specifically, the Court concludes that the evidence established not only that Mr. Van Benschoten's injuries "arose out of and were in the course of his employment" but the evidence further established that the employment relationship between the parties was predominant. In this re-

---

**1.** As will be discussed later in this opinion, plaintiff argues that defendants' second capacity is that of owner of land. At this point the court notes that the dual capacity doctrine has not been met with wide approval even when the independent obligations are said to arise by virtue of one's status as owner. *See State v. Purdy,* 601 P.2d 258 (Alaska 1979); *Doe v. St. Michael's Medical Center,* 184 N.J.Super. 1, 445 A.2d 40 (1982); 2A Larson, *Worker's Compensation Law* § 72.80 at 14–113 (1982).

gard, Mr. Van Benschoten himself testified that his visit to Granville to see Mr. Calhoun, and more specifically his visit to the Calhoun home were work related.

Q. Can you relate to the Court what the purpose of your visit to Granville, Ohio was?

A. I was in the process of becoming acquainted with staff people. In this case, the staff person in Ohio gets acquainted with them personally, though I was acquainted with them as people to meet in their offices to see their town and in some cases, their homes.

·    ·    ·    ·    ·

Q. [... Do] you feel there was a business purpose of going to the home or was this more or less a social visit on your part?

A. I felt that it was part of my totally getting acquainted with the person, his setting, and that would certainly include the home. I was not thinking of it as a social visit.

·    ·    ·    ·    ·

Q. You indicated or stated that in visiting his home on this occasion, it was your purpose to get to know him by getting to know where he lived and that would, of course, include the yard around his house, is that right?

A. I would see it as knowing him in the context of where he works and lives so that as I think of him as a staff person in Ohio, I can visualize the setting in which he works.

(*See* Van Benschoten transcript p. 4, L. 6–21; p. 7, L. 7–13; p. 19, L. 14–22)

Based upon the foregoing, the Court believes that plaintiff's own evidence clearly shows that at the time of the accident Mr. Van Benschoten was performing employment-related duties. His reasons for being at defendants' home and observing the defendants' real estate were by his own testimony related to his duties as co-employee of the American Baptist Churches, U.S.A.

The fact that defendant George Calhoun may have owed a duty to other potential invitees, while certainly true, is incidental. Since the employee's duties and conditions of employment brought him to the place where he was injured, the Court cannot conclude that the injuries were received under circumstances independent of and unrelated to the employment relationship existing between the parties.[2] *See Doe v. St. Michael's Medical Center,* 184 N.J.Super. 1, 445 A.2d 40 (1982); *Holzworth v. Fuller,* 122 N.H. 643, 448 A.2d 394, 395 (1982).

Further support for the Court's conclusion that the dual capacity doctrine is inapplicable on the facts of this case may be found in the recent Ohio Supreme Court case of *Freese v. Consolidated Rail Corp.,* 4 Ohio St.3d 5, 445 N.E.2d 1110 (1983).[3]

In *Freese,* a police officer was injured when his motorcycle struck a depression in the street near a railroad. While it was true that the City of Cincinnati had a legal obligation pursuant to R.C. 723.01 to keep its streets in good repair and thereby protect users of its roadways, according to the Supreme Court of Ohio, this was not the

**2.** Indeed the Court finds it somewhat inconsistent for the plaintiff to maintain on the one hand that defendants' status as a landowner created an obligation to the injured party independent of the employment relationship while on the other hand plaintiff vigorously maintains that the duty owed the injured should be defined by reference to the business reasons for his visit to the Calhoun home, *i.e.,* that the injured be deemed a business invitee.

**3.** The *Freese* case is important for a number of reasons. For example, plaintiffs also seemed to argue that the case of *Blankenship v. Cincinnati*

*Milacron Chemicals,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), wherein worker's compensation remedies were not deemed exclusive where intentional torts are concerned, signals a rethinking of the worker's compensation laws of the state generally. While we agree that *Blankenship* signaled a change in the philosophy of the court with respect to worker's compensation remedies for intentional torts, we do not believe that that case can be interpreted in the manner suggested by plaintiffs. *See Freese v. Consolidated Rail Corp.,* 4 Ohio St.3d 5, 6, 445 N.E.2d 1110 (1983).

sort of independent obligation required to trigger the dual capacity doctrine. In *Freese*, therefore, worker's compensation was the officer's exclusive remedy against the City. *Id.* at 9–10, 445 N.E.2d 1110. Similarly, in this case, the Court does not believe that when an employee invites a fellow employee to his home, in furtherance of their business or employment relationship, he has an independent obligation to that fellow employee which precludes him from taking advantage of the fellow servant immunity doctrine.

In sum, if this accident had happened on land owned and maintained by the injured's employer, I find no case law to suggest the applicability of dual capacity doctrine even assuming the property was negligently maintained by the employer and further assuming that the employer owed a standard of care to nonemployee invitees of the premises. The same rule should logically be applicable when an employee is injured when invited on the premises of a co-employee, and in this case where the co-employee's home can actually be said to be his work place.[4] Stated another way, the duty that Mr. Calhoun owed invitees generally is not the sort of independent relationship between the parties contemplated by the dual capacity doctrine. Frankly, on the facts of this case, the predominance of the employment relationship is simply undeniable.

Therefore, for all the reasons set forth above, the Court finds that the fellow servant immunity doctrine bars plaintiff's suit against George Calhoun.

## B. *Social Guest v. Business Invitee*

■ In addition to suing Mr. Calhoun, the plaintiff has sued Mrs. Calhoun claiming that she is liable to Mr. Van Benschoten as the wife of Mr. Calhoun and as co-owner of the property where Mr. Van Benschoten received his injuries.

As this Court noted on a previous occasion, it finds no statutory or case law to support the theory that Mrs. Calhoun is protected by Mr. Calhoun's fellow employee immunity. The only significant remaining inquiry is the nature of Mr. Van Benschoten's relationship to Mrs. Calhoun for purposes of determining the duty of care owed by Mrs. Calhoun. For all the reasons cited in this Court's memorandum and order of February 27, 1981, if Mr. Van Benschoten was Mrs. Calhoun's "social guest," she could not have been derelict in her duty to warn such a guest of a dangerous condition since she was not at the home nor did she have any knowledge that Mr. Van Benschoten would be visiting her home on that day. Based upon the undisputed facts adduced at trial therefore, Mrs. Calhoun could not be found liable on a social guest rationale.

If, however, the relationship between the injured party and Mrs. Calhoun is that of business invitee, the question of defendant Mrs. Calhoun's negligence should arguably have been submitted to the jury.

In the landmark case of *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), the Supreme Court of Ohio defined the duties owed and relationship existing between the owner of land and those who enter upon such land. More specifically, the *Scheibel* court defined business invitee to include

> the class of persons … who have come upon the land at the express or implied invitation of the possessor, for the purpose of transacting some business within the scope of the invitation.

156 Ohio St. at 315, 102 N.E.2d 453.

In this case there is no question that Mr. Van Benschoten was a business invitee of Mr. Calhoun. However, after careful consideration of all the evidence in this case, the Court is persuaded that reasonable minds could reach only one conclusion with respect to whether or not the injured party was Mrs. Calhoun's business invitee and that conclusion is that he was not.

---

**4.** As the Court noted at trial, however, this is not to say that where the injury occurs cannot be an important consideration or that under no circumstances could an injured employee recover from a co-worker.

In this regard the Court notes that the *Scheibel* court cited with approval a Massachusetts case, *Colbert v. Ricker*, 314 Mass. 138, 49 N.E.2d 459 (1943), which this Court finds to be persuasive authority on this question. In the Massachusetts case, a wife, as owner of certain real property, had expressly given her husband permission to transact business both prior to and at the time of the accident. In the *Colbert* case one of the husband's business invitees was injured during the course of such a business visit. Nonetheless, the Court held that the injured party was not a business visitor of the wife and was little more than a social guest of the wife. In so holding, the court noted that "the wife had no financial and proprietary interest in the business even though as wife she would naturally be interested in the commercial success of her husband." Since the wife had no pecuniary interest in the defendant's business, the court concluded that a customer of the husband while holding the status of business invitee with respect to the husband was nonetheless a social guest with respect to the wife.

Similarly on the facts of this case, while defendant Mrs. Calhoun knew that her husband had on one or more occasions entertained business associates at their home, she had no business or proprietary interest in her husband's business. Since there was no business relationship between the injured party and Mrs. Calhoun and since there is no evidence that Mrs. Calhoun benefitted from the injured party's visit, other than what has already been described, the Court believes that Mr. Van Benschoten was little more than a social guest of Mrs. Calhoun.

The plaintiff has posited one final argument in support of its contention that Mrs. Calhoun's relationship to Mr. Van Benschoten was that of business invitee and that there is some vicarious liability theory based on the marital or joint tenancy relationship between Mr. and Mrs. Calhoun. The Court finds absolutely no legal support for such a theory. Owners of land may be held liable for injuries to those injured on their premises by virtue of tort and negligence concepts. The Court believes, therefore, that Marian Calhoun's liability must be viewed separately from George Calhoun's. No liability should be imposed upon Marian Calhoun for the negligence of her husband, if any, committed in connection with property of which she is co-owner. *Sowers v. Birkhead*, 108 Ohio App. 507, 157 N.E.2d 459; Ohio Revised Code § 3103.08.

In conclusion, therefore, the Court believes that Mr. Van Benschoten's relationship to defendant Marian Calhoun was that of a social guest. Accordingly, for the reasons set forth above, defendant Marian Calhoun's motion for a directed verdict is GRANTED.

### III

The Clerk is directed, in accordance with this opinion, to enter a verdict for the defendants, George and Marian Calhoun, and against the plaintiff, Liberty Mutual.

So ORDERED.