GUY ET AL., APPELLANTS, *v.* ARTHUR H. THOMAS COMPANY ET AL.; THE CHRIST HOSPITAL, APPELLEE.

[Cite as Guy v. Arthur H. Thomas Co. (1978), 55 Ohio St. 2d 183.]

(No. 77-1330—Decided July 19, 1978.)

184

*Mr. Thomas W. Amann* and *Mr. H. Bradley Smith,* for appellants.

*Mr. James R. Adams* and *Mr. Larry H. McMillin,* for appellee.

LOCHER, J. The issue before this court is whether the remedy under the Ohio Workers' Compensation Law (R. C. Chapter 4123) is exclusive as to an employer's liability. Appellant does not contend that she has an action against appellee hospital for the original compensable injury, but does assert that her action against the appellee hospital for malpractice is not prohibited by R. C. 4123.74. In her first proposition of law, appellant argues that where, as in the instant cause, the employer occupies a second or dual capacity that confers obligations unrelated to and independent of those upon it as an employer, an employee injured as

a result of a violation of the employer's second or dual-capacity obligation is not barred by the workers' compensation laws from recovering from that employer. Appellant thus raises the application of the dual-capacity doctrine, urging that, in the instant cause, appellee hospital appears in two capacities, *i. e.*, as an employer and as a hospital, and that, as an employer, appellee hospital is liable for workers' compensation benefits, and, as a hospital it is liable in tort. See 2A Larson, Workmen's Compensation Law 14-112, Section 72.80 (1976).

The Court of Appeals rejected this argument premised upon dual-capacity, that appellee hospital's malpractice was in its capacity as her treating physician, not in its capacity as appellant's employer. The Court of Appeals based its judgment on its reading of Section 35, Article II of the Ohio Constitution, and R. C. 4123.74[1] and thus found that, since appellant's injury "was received or contracted in the course of her employment at the defendant hospital she is barred from proceeding against the hospital for aggravating the injury." Appellee argues analogously in its brief before this court that acceptance of the dual-capa-

---

[1]Section 35, Article II of the Ohio Constitution, provides, *inter alia*, as follows:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease * * *."

R. C. 4123.74 reads, in pertinent part, as follows:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition * * *."

city doctrine advanced by appellant would be in direct contravention to the mandates of R. C. 4123.74 and Section 35, Article II of the Ohio Constitution.

We are not persuaded that the purpose of either R. C. 4123.74 or Section 35, Article II of the Ohio Constitution, is to prohibit appellant's action against appellee hospital for its negligent treatment. The genesis of workers' compensation in the United States and Ohio was the inability of the common-law remedies to cope with modern industrialism and its inherent injuries to workers. See *State, ex rel. Munding, v. Indus. Comm.* (1915), 92 Ohio St. 434. Implicit therefrom is the concept that workers' compensation statutes relate generally to the legal connection or relationship between employer and employee. Perhaps best expressing the no-fault theory of workers' compensation as one essentially of *status* is the following comment by the Supreme Court of the United States, in *Cudahy Packing Co. v. Parramore* (1923), 263 U. S. 418, at page 423:

"Workmen's compensation legislation rests upon the idea of status, * * * that is, upon the conception that an injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operation he contributes his work as the owner contributes his capital —the one for the sake of the wages and the other for the sake of the profits. The act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

The essentiality of this status or relationship is connoted in Ohio by the usage of the very terms "employer" and "employee" in both Section 35, Article II of the Ohio Constitution, and R. C. 4123.74. See *Conrad v. Youghiogheny & Ohio Coal Co.* (1923), 107 Ohio St. 387; *Indus. Comm. v. Bateman* (1933), 126 Ohio St. 279; *Prendergast v. Indus. Comm.* (1940), 136 Ohio St. 535. Moreover, the importance of the existence of this *status* for the applicability of Ohio's workers' compensation is readily discern-

ible by the plethora of cases addressing the issues of whether one was an "employee" or whether the injury was one "received * * * in the course of or arising out of," the injured employee's employment.[2]

In juxtaposition, where the employer-employee relationship does not exist, workers' compensation has not been found to affect the right of a workman to sue a third-party tortfeasor for injuries received in the course of his employment through negligence. *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St. 791; *Ohio Public Service Co.* v. *Sharkey* (1927), 117 Ohio St. 586, overruled on other grounds, 120 Ohio St. 394; *George* v. *Youngstown* (1942), 139 Ohio St. 591.

The dual-capacity doctrine advanced by appellant has been utilized by the California Supreme Court in *Duprey* v. *Shane* (1952), 39 Cal. 2d 781, 249 P. 2d 8. The facts in *Duprey, supra*, are strikingly analogous to the cause *sub judice*. The plaintiff was a nurse employed by the Shane Diagnostic Foundation. After receiving a compensable injury in the course of her employment she was treated by her employer and received further disability as a result of the negligently administered treatment. In holding the employer vulnerable to a common-law suit for malpractice, the court found the employer, in his role as a doctor, to be a "person other than the employer," *i. e.*, a third party. The court maintained, at page 793, that the holding of this case was justified by the unusual facts:

" 'It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved—Dr. Shane—bore towards his employee two relationships—that of employer and that of

[2]The following are merely a few of our prior decisions which addressed these issues: *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589; *Bobik* v. *Indus. Comm.* (1946), 146 Ohio St. 187; *Kohlmayer* v. *Keller* (1970), 24 Ohio St. 2d 10; *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18; *Sebek* v. *Cleve. Graphite Bronze Co.* (1947), 148 Ohio St. 693; *Indus. Comm.* v. *Bateman* (1933), 126 Ohio St. 279.

a doctor— there should be no hesitancy in recognizing this fact as fact. Such a conclusion, in this case, is in precise accord with the facts and is realistic and not legalistic.' "

It has been stated that the decisive test of dual-capacity is not with how separate the employer's second function is from the first, but whether the second function generates obligations unrelated to those flowing from the first, that of an employer. 2A Larson, *supra*, at 14-117. In *Duprey, supra*, the court stated, at pages 792-793:

" '\* \* \* [B]ut on principle and logic it would seem that it should make no difference to the liability of a doctor for malpractice whether the attending doctor is the employer or an insurance doctor. \* \* \* There seems to be no logical reason why an employer-doctor, when he undertakes to treat an industrial injury, should not be responsible in a civil action for his negligent act in treating that injury. \* \* \* In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to [ ] [plaintiff] was that of doctor and patient.' "

Although not expressly referring to the dual-capacity doctrine, it is apparent that the Supreme Court of the United States, in *Reed* v. *The Yaka* (1963), 373 U. S. 410, applied the test of dual-capacity in arriving at its result. In *Reed, supra*, the court found that an employer, who defended on the basis of the exclusive remedy provision in the Longshoremen's and Harbor Workers' Compensation Act,[3] was liable to his employee as a bareboat charterer

---

[3]The "exclusiveness of liability" section of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1426 (1927), Section 905, Title 33, U. S. Code (1958), construed in *Reed, supra*, provided as follows:

"Sec. 5. The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this Act, an injured employee, or his legal repre-

for injuries arising from the unseaworthiness of the chartered vessel. In so finding, the court commented, at page 415:

"* * * [O]nly blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only the employer of longshoremen, but was also a bareboat charterer and operator of a ship, and, as such was charged with the traditional, absolute and nondelegable obligation of seaworthiness which it should not be permitted to avoid. * * * We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from shipowners and others from a stevedoring company doing the ship's service. Petitioner's need for protection from unseaworthiness was neither more nor less than that of a longshoreman working for a stevedoring company."

We find the logic expressed in *Duprey, supra,* and *Reed, supra,* to be compelling and applicable herein. Appellee's argument is that Ohio's workers' compensation requires us to ignore the fact that appellee hospital was not only the employer of appellant, but also the treating hospital and, as such, charged with the obligations that arise in a hospital-patient relationship. The anomalous result urged by appellee is that the workers' compensation laws of Ohio require appellee hospital's liability to be distinguished upon whether the malpractice that aggravates a compensable injury was bestowed upon its hospital employee or any other hospital's employee or, for that mat-

sentative in case death results from the injury, may elect to claim compensation under this Act, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

190

ter, another's employee. Appellant's need for protection from malpractice was neither more nor less than that of another's employee. The appellee hospital, with respect to its treatment of the appellant, did so as a hospital, not as an employer, and its relationship with the appellant was that of a hospital-patient with all the concomitant traditional obligations. Furthermore, it is not denied that, if appellant's compensable injury had been aggravated by any other hospital, appellant would have had a cause of action for malpractice. We find no compelling reason why an action should be less viable merely because the traditional obligations and duties of the tortfeasor spring from the extra-relational capacity of the employer, rather than a third party.

Appellee asserts that for this court to find appellee hospital subject to a malpractice action in its second capacity would necessitate reversal of our decision in *Proctor* v. *Ford Motor Co.* (1973), 36 Ohio St. 2d 3. A perusal of our opinion therein reveals no consideration by this court of the application of the dual-capacity doctrine as to whether an employer-doctor was liable for malpractice to a fellow employee. To the extent that this instant decision bases liability upon the appellee hospital's obligations generated from its second function, unrelated to its function of an employer, a result contrary to that reached in *Proctor, supra,* is implied therefrom.

Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

HERBERT, CELEBREZZE, W. BROWN and SWEENEY, JJ., concur.

P. BROWN, J., dissents.

O'NEILL, C. J., not participating.