FREESE ET AL., APPELLANTS, *v.* CONSOLIDATED RAIL CORPORATION; CITY OF CINCINNATI, APPELLEE.

[Cite as Freese *v.* Consolidated Rail Corp. (1983), 4 Ohio St. 3d 5.]

(No. 82-377—Decided March 9, 1983.)

*Mr. Dennis A. Becker,* for appellants.

*Mr. Richard A. Castellini,* city solicitor, and *Mr. Daniel J. Schleuter,* for appellee city of Cincinnati.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Ms. Debi Everson,* urging affirmance for *amicus curiae,* city of Columbus.

*Mr. Harry E. Klide,* law director, and *Ms. Constance Butera,* urging affirmance for *amicus curiae,* city of Canton.

*Mr. James E. Young,* law director, and *Mr. John D. Maddox,* urging affirmance for *amicus curiae,* city of Cleveland.

*Mr. Robert D. Pritt,* director of law, and *Mr. James Thomas,* urging affirmance for *amicus curiae,* city of Akron.

*Mr. Thomas G. Petkewitz,* city attorney, and *Mr. Edward Newman,* urging affirmance for *amicus curiae,* city of Dayton.

*Mr. Sheldon M. Rosen,* law director, and *Mr. Gregory T. Merritt,* urging affirmance for *amicus curiae,* city of Toledo.

HOLMES, J. Section 35, Article II of the Ohio Constitution grants the authority to the General Assembly to establish a workers' compensation program and expressly provides that such compensation is the exclusive remedy of the employee who has been injured within the course of his employment.[1]

The General Assembly codified the exclusivity of the workers' compensation laws in quite unambiguous terms in R.C. 4123.74.[2]

It is uncontested by the parties that the city of Cincinnati was in full compliance with the workers' compensation statutes at the time of the accident. Therefore, the appellant's exclusive remedy would be his workers' compensation benefits unless it was specifically alleged and there exist issues of material fact that either the city of Cincinnati had intentionally occasioned the injuries, as this court has recently interpreted such claims of employees in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], or the employer had occupied a "dual capacity" to the

---

[1] Section 35, Article II of the Ohio Constitution provides in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance therewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

[2] R.C. 4123.74 provides:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

employee at the time of the accident. There is no claim in this case that the city of Cincinnati acted intentionally in causing the injuries to this appellant.

The only allegation contained in the complaint relative to the claimed obligation of the city to the appellant-employee is that the appellant's injuries were the direct and proximate result of the city "failing to maintain its roadways in a safe, open condition and for failing to provide a safe roadway adjacent to the aforementioned tracks." The issue before this court is whether under the facts of this case the dual-capacity doctrine might be applicable, or whether the pleadings, and all the other proper material before the trial court, warrant the granting of the city's motion for summary judgment based upon the assertion of the exclusivity of the workers' compensation remedy.

The dual-capacity doctrine refers to the relationships between an employer and employee as in a given case might be established by the facts. In his treatise on The Law of Workmen's Compensation, Professor Arthur Larson, of Duke University, states:

"In comparatively recent years there has appeared in various contexts what might be called the dual-capacity doctrine. Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." 2 Larson's Workmen's Compensation, Section 72.80 (Desk Ed. 1982).

The so-called dual-capacity doctrine was first discussed and adopted by this court in Guy v. Arthur H. Thomas Co. (1978), 55 Ohio St. 2d 183 [9 O.O.3d 138]. In Guy, this court allowed recovery by the plaintiff, a laboratory technician who was an employee of the defendant hospital, in an action alleging that the plaintiff-technician was a patient within the defendant hospital, and as such had been injured by the medical malpractice of the hospital while confined for treatment. The syllabus law expressed in Guy, supra, states:

"Where an employer-hospital occupies a second or dual capacity, as an administering hospital, that confers upon it traditional obligations unrelated to and independent of those imposed upon it as an employer, an employee injured, as a result of a violation of the obligations springing from employer-hospital's second or dual capacity, is not barred by either Section 35 of Article II of the Ohio Constitution or R.C. 4123.74, Ohio Workers' Compensation Law, from recovering in tort from that employer-hospital."

The basic requirement of the doctrine of dual capacity upon which this court relied in Guy, supra, was expressed in 2A Larson, Workmen's Compensation Law, Section 72.81 (1982), as follows:

"An employer may become a third person, vulnerable to tort suit by an employee, if — and only if — he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person."

This court, in Guy, supra, reasoned that the determinative factor was

one of status. The plaintiff in that case, a laboratory technician, although contracting mercury poisoning in the course of her employment, was allegedly treated negligently by the hospital for such condition. This court, in finding a dual capacity toward the plaintiff, held that the hospital had obligations toward the plaintiff unrelated to and independent of those imposed upon it as an employer, and that as such the plaintiff's action was not barred by R.C. 4123.74. The court stated, at page 186:

" '* * * The [workers' compensation] act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.' " (Quoting from *Cudahy Packing Co.* v. *Parramore* [1923], 263 U.S 418, at 423.)

Justice Locher, in the opinion in *Guy, supra,* referred to one of the leading cases in the country which had discussed the dual-capacity doctrine, *Duprey* v. *Shane* (1952), 39 Cal. 2d 781, 249 P. 2d 8. *Duprey* involved a fact pattern strikingly similar to that in *Guy, supra,* in that the plaintiff in that case was a nurse employed by a partnership of doctors engaged in the practice of chiropractic medicine. After receiving an injury in the course of her employment, she was treated by those doctors, which treatment resulted in new and aggravated injuries. The plaintiff sought workers' compensation benefits for the original injury and sued the doctors for malpractice for creating the new and aggravated injuries. The California court held the doctors liable in their roles as treating physicians — a person other than an employer, *i.e.,* a third party. The court in *Duprey,* at page 793, held that:

" 'It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved — Dr. Shane — bore towards his employee two relationships — that of employer and that of a doctor — there should be no hesitancy in recognizing this fact as fact. Such a conclusion, in this case, is in precise accord with the facts and is realistic and not legalistic. * * *

" 'In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to * * * [plaintiff] was that of doctor and patient.' "

The opinion of this court in *Guy, supra,* as does Professor Larson, speaks of the necessity that the obligation of the employer under the particular circumstances surrounding the incident giving rise to the action be independent of and unrelated to the employer's obligation to the employee arising out of the employer-employee relationship.

Although this case does not involve an employee's claim against an employer based upon product liability, and we make no specific comment relative to any such issue,[3] we refer to *Goetz* v. *Avildsen Tool & Machines,*

---

[3] This opinion does not address the issue of the obligation of the employer growing out of injuries received by the employee due to alleged defective products manufactured by the employer

*Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E. 2d 555, where the Illinois court, in dismissing the dual-capacity doctrine in a case brought by an employee injured by a machine built by the employer not for commercial resale, but for its own use and purposes within the particular plant, stated, at page 1060, 403 N.E. 2d at 560:

"Accordingly, to conclude that a complaint sets forth the dual capacity of an employer, an underlying determination must be made that the facts alleged establish distinct duties and obligations which are generated by that second capacity and unrelated to those obligations and duties flowing from the first, that of employer * * *. It is only then that a complaint alleges the existence of a second capacity and the employer's status as employer is merely coincidental."

Other courts, in the analysis and determination of the existence of the dual-capacity relationship between employer and employee, have expressed such status in terms of whether the employment relationship is incidental to the injury, or whether the employment relationship predominates in the circumstances surrounding the incident giving rise to the complaint. Such a case is *Kottis* v. *United States Steel Corp.* (C.A. 7, 1976), 543 F. 2d 22, which involved an action brought by the estate of an employee who was killed while performing his duties as a craneman for his employer, United States Steel Corporation. In her amended complaint, the employee's administratrix alleged that United States Steel was not only Kottis' employer, but also occupied the capacity of being the owner of the land where the accident occurred and, as such, United States Steel owed Kottis the same duty to exercise reasonable care to discover defects or dangerous conditions on the premises that it owed other invitees. The Seventh Circuit Court of Appeals, in applying Indiana law, rejected the application of the dual-capacity doctrine. It stated, at pages 25-26:

"Whatever may be said, when the specific statutory language permits, for allowing a remedy in addition to workmen's compensation in cases such as *Duprey* v. *Shane, supra,* in which the employment relationship is incidental to the injury, we see no basis for granting such a remedy here, where the employment relationship predominates. The injury to plaintiff's decedent was precisely the kind of injury the Workmen's Compensation Act was intended to cover. It occurred while he was performing his job in his employer's steel mill * * *." See, also, *Smith* v. *Metropolitan Sanitary Dist. of Greater Chicago* (1979), 77 Ill. 2d 313, 396 N.E. 2d 524.

Whatever the test applied to determine the status of the party claimed to owe an obligation, be it based upon a consideration of whether there exists an unrelated or independent relationship of the parties other than employer and employee, or based upon a test of whether the employment relationship is in-

---

and being used by the employee during the course of his employment. Such a case was that of *Mercer* v. *Uniroyal* (1976), 49 Ohio App. 2d 279 [3 O.O.3d 333]. We are not confronted with like factual issues.

cidental or predominant, the same result may be reached. In either approach, what must be determined is whether the employer stepped out of his role as such, and had assumed another hat or cloak. If the facts would show the latter, the employer has accordingly assumed another capacity and also has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship.

Here, the facts indisputably are that at the time of the accident the appellant was performing his duties as a motorcycle officer which required him to travel the city's streets in the regular course of his employment. At all times relevant herein, the city was the appellant's employer and there never arose another independent relationship between the two. However, the appellant claims that by virtue of R.C. 723.01, which statute requires the city to keep its streets open, in repair, and free from nuisance, the city owes him an unrelated and independent duty. This assertion is, in the main, an allegation that the city employer as owner of the "premises" upon which the appellant as a police officer works, has an obligation toward him to maintain a safe place to work.

We must reject this latter proposition. First, although R.C. 723.01 imposes a duty upon the city to keep the streets clear and free from nuisance for the benefit of the general public, the statute does not generate obligations to this employee independent of and unrelated to the city's obligations as an employer.

Further, an action brought against the city based upon its negligence in maintaining its streets is exactly the nature of action precluded by the exclusivity provisions of Section 35, Article II of the Ohio Constitution, as implemented by R.C. 4123.74 of the Workers' Compensation Act. Thus, as stated in *Kottis* v. *United States Steel Corp., supra,* at page 26:

"* * * Failure of the employer to provide a safe place to work is the cause, or can plausibly be alleged to be the cause, of a substantial proportion of industrial accidents. It was one of the most important grounds for master-servant actions at common law * * * which the workmen's compensation remedy was designed to replace. Allowing a remedy in addition to workmen's compensation for such cases would make substantial, if not devastating, inroads on the Indiana workmen's compensation scheme."

It seems to be rather universally held that a complying employer is not obligated to his employee as the owner or occupier of land, whether the cause of action is based on the common law obligations of landowners or on safe-place-to-work statutes or so-called structural work acts. Exemplary of such cases are: *Walker* v. *Berkshire Foods, Inc.* (1976), 41 Ill. App. 3d 595, 354 N.E. 2d 626; *Frith* v. *Harrah South Shore Corp.* (1976), 92 Nev. 447, 552 P. 2d 337; *Parker* v. *Williams & Madjanik, Inc.* (1980), 275 S.C. 65, 267 S.E. 2d 524; *Gore* v. *Amoco Production Co.* (Tex. Civ. App. 1981), 616 S.W. 2d 289; and *Hudson* v. *Allen* (1968), 11 Mich. App. 511, 161 N.W. 2d 596. See, also, 2A Larson, Workmen's Compensation Law, Section 72.82 (1982).

Similarly, it would appear that many courts across the country have re-

jected the dual-capacity claims against governmental entities, when the claims rely upon the theory of safe place to work, or upon the basis that the claimant is an employee of one department of the employer government and that the injury had been occasioned by an employee of another department of that governmental entity. Accordingly, we note the Illinois case of *McCarty* v. *Marshall* (1977), 51 Ill. App. 3d 842, 366 N.E. 2d 1052, wherein the plaintiff McCarty was employed by the electric department of the city of Marshall, and in the course of repairs on the city's power plant, he received a shock and fell ten feet to the ground. McCarty brought an action against the city under the Structural Work Act, which may reasonably be likened to the approach upon which this appellant proceeds. The trial court dismissed the action, holding that the doctrine of dual capacity did not apply, and the appellate court affirmed.[4]

We find the exclusivity of the workers' compensation remedy as reached in these cited cases to be proper and applicable to the instant case. Otherwise, injured municipal employees, such as firemen, policemen, sanitation workers, who regularly work and travel upon the public streets, highways and sidewalks of our cities would be legally permitted to circumvent the exclusivity provisions of the Workers' Compensation Act and both obtain the benefits of the Act and recover in tort based upon allegations of negligence of the municipal employer.

In conclusion, based upon our prior holding in *Guy* v. *Arthur H. Thomas Co., supra,* in order for the dual-capacity doctrine to apply, there must be an allegation and showing that the employer occupied two independent and unrelated relationships with the employee, that at the time of these roles of the employer there were occasioned two different obligations to this employee, and that the employer had during such time assumed a role other than that of employer. Here, the only injuries for which the appellant is seeking damages are those he suffered in the course of his employment due to his employer's negligence in failing to maintain a safe place to work. There has been no showing that the city ever assumed a second independent and unrelated role as to this appellant. The city did not assume, or occupy, a dual capacity to this appellant. The Workers' Compensation Act is, in this instance, the exclusive avenue of recovery for this employee.

---

[4] Some additional cases based upon claims by government employees brought against the government employer wherein the courts have rejected the doctrine of dual capacity are as follows: *Berger* v. *U.G.I. Corp.* (1981), 285 Pa. Super. 374, 427 A. 2d 1161, allegation that death of a city fireman in a gas explosion was caused by the city water and sewer department's negligent installation of a water main too close to a gas line; *Wright* v. *Moore* (La. App. 1979), 380 So. 2d 172, claim against the state by a nurse employed by the state health department alleging that she had been injured through the negligence of a state transportation department employee; *Walker* v. *San Francisco* (1950), 97 Cal. App. 2d 901, 219 P. 2d 487, action by widow of a city fireman for wrongful death caused by a collision with a municipal streetcar; *Osborne* v. *Commonwealth* (Ky. 1962), 353 S.W. 2d 373, state highway employee struck by a state police car; *Bross* v. *Detroit* (1933), 262 Mich. 447, 247 N.W. 714, fireman injured in a collision with a city trolley.

For all of the above reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, MAHONEY, C. BROWN and PUTMAN, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., concur in judgment only.

MAHONEY, J., of the Ninth Appellate District, sitting for LOCHER, J.

PUTMAN, J., of the Fifth Appellate District, sitting by assignment.