923 F.2d 854
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anna M. EVANS, Executrix of Olen E. Evans, deceased,
Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 90-3383.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1991.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Anna M. Evans, executrix of the estate of Olen E. Evans, appeals the district court's grant of summary judgment for defendant-appellee General Motors Corporation in this negligence action. We affirm the judgment of the district court.
 
 I.
 
 2
 On April 29, 1987, Olen E. Evans suffered a heart attack while working at GM's automobile assembly plant in Lordstown, Ohio. According to appellant, "[t]he decedent's heart attack was not from causes within the course of or scope of Olen's employment." Evans' Brief at 4 (emphasis in original). Mr. Evans received first aid treatment at the plant's medical facility and was then transported in a company ambulance to a nearby hospital. On May 1, 1987, Mr. Evans was pronounced dead after a second heart attack.
 
 
 3
 Anna M. Evans, executrix of the estate of Olen E. Evans, filed this complaint against defendant-appellee General Motors Corporation ("GM") in the Court of Common Pleas for Trumbull County, Ohio on April 24, 1989.[1] Evans' complaint, based upon Ohio's wrongful death statutes, alleges that GM negligently and/or intentionally provided inadequate medical services to her husband, Olen Evans, and that such inadequate service proximately caused Mr. Evans' death. Evans contends that the treatment provided her husband by GM's nurse was insufficient and that the company ambulance which transported her husband to the hospital was ill-equipped because it did not contain emergency lights and siren or other essential emergency medical equipment. The gravamen of the complaint is that had Mr. Evans been transported in a properly equipped ambulance, he would have survived the heart attack.
 
 
 4
 GM removed the case to federal district court based on diversity of citizenship.[2] GM filed a motion to dismiss and/or for summary judgment on June 12, 1989. On April 3, 1990 the United States District Court for the Northern District of Ohio, Judge John M. Manos presiding, granted summary judgment in favor of GM on the issues of negligence and intentional tort. The district court also dismissed Evans' constitutional claims for want of subject matter jurisdiction. This timely appeal followed.
 
 
 5
 There are two issues raised on appeal: (1) whether the district court erred in failing to apply the dual-capacity doctrine to appellant's claim; and (2) whether the district court erred in finding appellant's alternative intentional tort claim barred by the statute of limitations.
 
 II.
 
 6
 Under Ohio law, employers who comply with Ohio's Workers' Compensation Act ("the Act") are statutorily immune from civil suits for unintentional employment-related injuries. Ohio Rev.Code Ann. Sec. 4123.74 (Anderson 1980 & Supp.1989). Relying on Sec. 4123.74, the district court below held that "an employee's injury arising from negligent medical care provided by an industrial employer is compensable only under the Act." J.App. at 113 (citing Proctor v. Ford Motor Co., 32 Ohio App.2d 165, 289 N.E.2d 366 (1972), rev'd on other grounds, 36 Ohio St.2d 3, 302 N.E.2d 580 (1973)). Thus, the district court granted GM's motion for summary judgment. Evans argued below and now argues on appeal that statutory immunity pursuant to Sec. 4123.74 is inapplicable under the dual capacity doctrine.
 
 
 7
 Recently in Schump v. Firestone Tire & Rubber Co., 44 Ohio St.3d 148, 541 N.E.2d 1040 (1989), the Ohio Supreme Court summarized the dual-capacity doctrine. First recognized by the Ohio Supreme Court in Guy v. Arthur H. Thomas Co., 55 Ohio St.2d 183, 378 N.E.2d 488 (1978), the dual-capacity doctrine is a narrow exception to the general rule of employer statutory immunity in negligence suits brought by employees. Under the dual capacity doctrine, " 'an employer normally shielded from tort liability ... may become liable in tort to his own employee if he occupies ... a second capacity that confers on him obligations independent of those imposed as employer.' " Freese v. Consolidated Rail Corp., 4 Ohio St.3d 5, 8, 445 N.E.2d 1110, 1112 (1983) (citation omitted). To fall within the dual capacity/second capacity doctrine, " 'the employer must step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship.' " Schump, 44 Ohio St.3d at 152, 541 N.E.2d at 1044-45 (citation omitted). If, however, the injury is caused predominantly by the employment relationship and not by an independent relationship, the doctrine of dual capacity is inapplicable. Bakonyi v. Ralston Purina Co., 17 Ohio St.3d 154, 157-58, 478 N.E.2d 241, 243 (1985).
 
 
 8
 Evans contends that GM has voluntarily assumed the duty of rendering emergency care and transportation in life threatening situations. Evans argues that this duty does not spring from the employer/employee relationship but rather springs from GM's voluntary assumption of providing emergency medical care. Evans maintains that the obligations voluntarily assumed by GM are distinctly unrelated to GM's status as an employer. Evans relies heavily on the fact that GM provides emergency medical services not only to its employees but to on-site independent contractors and on-site visitors. In sum, Evans argues that GM's "policy" of providing emergency medical care and transportation is outside the course and scope of any employment relationship and thus for the purposes of this suit GM falls within the dual capacity doctrine.
 
 
 9
 Applying Ohio law to the facts at hand, we agree with the district court's finding that the dual-capacity doctrine is inapplicable.[3] Generally " 'the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic.' " Freese, 4 Ohio St.3d at 9, 445 N.E.2d at 1113 (citation omitted). See also Bakonyi, 17 Ohio St.3d at 156, 478 N.E.2d at 243 (citation omitted) (noting that the dual-capacity doctrine is not without limit). In providing emergency medical care and transportation to the deceased, GM did not "step[ ] out of [its] role [as an employer] and ... assume[ ] another hat or cloak." Freese, 4 Ohio St.3d at 11, 445 N.E.2d at 1114. GM's conduct in providing emergency service to the deceased stemmed from the obligations any employer assumes and cannot be construed as generating obligations unrelated to those flowing from that of employer. "At all times relevant herein, [GM] was the [deceased's] employer and there never arose another independent relationship between the two." Freese, 4 Ohio St.3d at 11, 445 N.E.2d at 1114. On the facts before us, Ohio law simply does not allow the application of the dual-capacity. See Proctor v. Ford Motor Co., 36 Ohio St.2d 3, 6, 289 N.E.2d 366, 302 N.E.2d 580, 582 (1973) ("The business of Ford is manufacturing automobiles; yet to say that its maintenance of a fully-staffed plant medical facility is unrelated to producing cars ignores the reality of modern industrial life.").
 
 
 10
 To be sure, the dual-capacity doctrine is a viable doctinre, but it applies in cases different from the current one. Guy v. Arthur H. Thomas Co., 55 Ohio St.2d 183, 378 N.E.2d 488 (1978), presents the kind of factual situation to which the dual-capacity doctrine is applicable. In Guy a laboratory technician who was an employee of the defendant hospital had contracted mercury poisoning in the course of her employment. Plaintiff-employee was injured by the medical malpractice of the employer-hospital while confined for treatment for the poisoning. The court found a second capacity because the plaintiff was injured as a result of a violation of the obligations springing from employer-hospital's second capacity as a hospital. The employer-hospital had obligations toward plaintiff unrelated to and independent of those imposed upon it as an employer. Also, in Mercer v. Uniroyal, Inc., 49 Ohio App.2d 279, 361 N.E.2d 492 (1976) the court of appeals held the dual-capacity doctrine applicable. The present case is easily distinguishable from Guy, and the Ohio Supreme Court rejected the rationale of Mercer in Schump. Schump, 44 Ohio St.3d at 151, 541 N.E.2d2d at 1044.
 
 
 11
 Therefore, we find that the district court correctly applied Ohio law in rejecting Evans' claim that the dual-capacity doctrine was applicable.
 
 III.
 
 12
 The second issue presented is whether the district court erred in granting summary judgment to GM by applying a one year rather than a two year statute of limitations. For the reasons set forth below, we do not think that the district court erred.
 
 
 13
 Alternative to its negligence theory, appellant argued below, based upon Ohio Rev.Code Ann. Sec. 4121.80 (Anderson Supp.1989), that GM "intentionally caused Evans' death by providing emergency medical care which was substantially certain to harm him." J.App. at 114 (quoting district court opinion). Without question, Ohio law allows an employee to bring an intentional tort suit against an employer for an employment-related injury. Ohio Rev.Code Ann. Sec. 4121.80 (Anderson Supp.1989); Blankenship v. Cincinnati Milacron Chemicals, Inc., 69 Ohio St.2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857 (1982). Section 4121.80(A), however, provides that such intentional actions "shall be brought within one year of the employee's death or the date on which the employee knew or through the exercise of reasonable diligence should have known of the injury ..., whichever date occurs first." (emphasis added). If Sec. 4121.80(A) is applicable here, appellant's claim is time barred.[4]
 
 
 14
 Evans argues that Sec. 4121.80(A) is inapplicable here because this one year statute only applies when intentional wrongdoings of the employer arise outside of the course and scope of the work relationship. Thus, Evans contends that the correct statute of limitations is the two-year statute found in Ohio Rev.Code Ann. Sec. 2305.10 (Anderson 1981 & Supp.1989). We disagree.
 
 
 15
 Although plaintiffs have urged the Ohio courts to adopt a distinction between intentional torts which occur within or outside the employment relationship on several occasions, the Ohio courts have refused to draw such a distinction. Bertolino v. Indust. Comm'n of Ohio, 43 Ohio St.3d 44, 46-7, 538 N.E.2d 1040, 1043 (1989) (Douglas, J., dissenting) (acknowledging that a majority of the Ohio Supreme Court has not adopted the distinction); Kunkler v. Goodyear Tire & Rubber Co., 36 Ohio St.3d 135, 140-41, 522 N.E.2d 477, 482-85 (1988) (Douglas, J., concurring). Even assuming that the distinction was applicable, that is assuming that Sec. 4121.80 only applies to intentional wrongdoings which arise outside of the course and scope of the work relationship," appellant's assertion would nevertheless fail. To the extent that appellant is arguing that the alleged intentional injury arose outside of the course and scope of employment because GM was acting in an independent relationship rather than an employment relationship, appellant's contention is contingent upon this court finding the dual/capacity doctrine applicable. Evans' Brief at 18-19; Evans' Reply Brief at 1. Since we have found the dual capacity doctrine inapplicable, the distinction would not cure appellant's statute of limitations problem.
 
 
 16
 Further, as the district court stated, Sec. 4121.80(H) "states that section 4121.80 governs all intentional tort claims against employers filed after the effective date of the statute, August 22, 1986, 'notwithstanding any provisions of any prior [state] statute or rule of law....' " J.App. at 115.
 
 
 17
 Therefore, we find that the district court properly granted summary judgment on Evans' intentional tort claim.
 
 IV.
 
 18
 For the foregoing reasons we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable R. Allan Edgar, District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The initial complaint in this case was filed in the Court of Common Pleas of Trumbull County, Ohio on October 31, 1988. GM removed the case to federal court. Plaintiff voluntary dismissed this initial complaint without prejudice on December 21, 1988
 
 
 [2]
 Appellant Evans filed a worker's compensation claim prior to initiating her second suit in this case. The worker's compensation claim remains unresolved. GM denied the workers' compensation claim and thus has not certified it
 
 
 [3]
 In Omerzo v. RMI Co., No. 89-3748 (6th Cir. Aug. 29, 1990) (per curiam), this court reiterated the long standing principle that:
 in diversity cases, where the local law is uncertain under state court rulings, if a federal district judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse, even though it may think the law should be otherwise.
 (quoting Rudd-Melikian, Inc., v. Merritt, 282 F.2d 924, 929 (6th Cir.1960).
 
 
 [4]
 This is so because the deceased died on May 1, 1987, and the complaint was not filed within one year from that date. The statute reads that the action must be filed within one year from the employee's death or discovery of the injury