**Dan J. OROS, Plaintiff**

v.

**HULL & ASSOCIATES, INC., Defendant.**

**No. 3:02CV7461.**

United States District Court, N.D. Ohio, Western Division.

Jan. 30, 2004.

---

Andrew J. Ayers, Bahret & Associates, Marc J. Meister, Meister, Ayers & Meister, Holland, for Dan J. Oros, Plaintiff.

Valerie A. Trudel, Reminger & Reminger, Toledo, Donald J. Moracz, Reminger & Reminger, Sandusky, Samuel J. Nugent, City of Toledo, Department of Law, Garrick O. White, Anspach, Meeks & Nunn, Richard F. Ellenberger, Anspach, Meeks & Nunn, L.L.P., Toledo, for Hull & Associates, Inc., Toledo, Ohio, City of, John Doe, John Doe # 2, John Doe # 3, John Doe # 4, Genesis Contracting, Inc., Defendants.

## ORDER

CARR, District Judge.

This is an employer intentional tort case in which the plaintiff, Dan Oros, accuses his former employer, defendant Hull & Associates ("Hull"), of intentionally causing him to be exposed to toxic waste during his employment. This court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

Pending is defendant's motion for summary judgment. For the following rea-

sons, that motion will be denied in part and granted in part.

## BACKGROUND

Plaintiff began employment with defendant in January, 2000. He was hired while still a graduate student at the University of Toledo, and worked part-time until March, 2000, when he became a full-time hydrogeologist.

On Friday, April 25, 2000, Bill Petruzzi, Hull's office manager, asked plaintiff to work over that coming weekend to supervise a waste removal project at a site in Toledo, Ohio. Plaintiff was referred to William Burkett, a senior project manager at Hull. Burkett, in charge of the project, had earlier that day discovered that the site Hull was excavating for the project contained several drums of some type of waste. These drums needed to be removed from the site over the weekend so that construction could continue on the site as planned.

Hull was to supervise the removal and remediation of the drums at the site. A company called Genesis Contracting, Inc. ("Genesis"), was to perform the removal and remediation, and plaintiff's responsibilities were to observe the excavation of the drums and document the weekend's activities. Plaintiff would be the only Hull employee present at the site that weekend.

Burkett was in charge of ensuring that plaintiff had all necessary safety equipment for the weekend's work. Plaintiff claims that when he asked Burkett whether any personal protective equipment would be needed for the project, Burkett said no and told plaintiff to "stay upwind" from the excavation. (Doc. 51, at 6). Plaintiff further claims that Burkett did not advise him that "he might be coming in contact with hazardous material." (*Id.* at 8–9).

Plaintiff alleges that Burkett failed to advise plaintiff to use any safety equipment at the site despite Burkett's personal knowledge that the site had once been an unregulated municipal waste dump and that several unknown and likely toxic chemicals had been discovered at the site. Plaintiff alleges that Burkett designated the site a "hot zone" on that Friday, August 25, 2000. This signified that no personnel should enter the site unless required to perform a specific task. (*Id.* at 6).

When plaintiff arrived at the site Saturday morning, August 26, 2000, Genesis had already begun excavation, and plaintiff found an upwind location from which to observe the activities. Sometime that morning, a Genesis worker struck and punctured a drum while excavating, and plaintiff smelled something akin to "paint-thinner." (Doc. 51 exh. 1, at 4). Later that morning, a Genesis employee gave plaintiff a respirator, but plaintiff claims that the respirator was too big and did not fit his face properly. According to plaintiff's brief, a respirators must be fitted with proper filters to be effective. It is not clear what, if any, filter was in place in the respirator plaintiff used. Because the chemicals present at the site had not been tested at that time, however, no one could have known which filter was appropriate for use in plaintiff's respirator. Plaintiff alleges that he mentioned the smell and the respirator he received from Genesis to Burkett during a phone call that day, but that Burkett simply told him to stay upwind and "use caution." (*Id.* at 5).

Plaintiff alleges that he suffered injuries from exposure to toxic fumes on the project site on August 26, 2000. Plaintiff asserts claims for: 1) employer intentional tort; 2) dual capacity; 3) ultrahazardous activity; and 4) negligence. Defendant asserts that summary judgment is appropriate on all claims both because plaintiff has failed to establish a prima facie intentional

tort case and because defendant is immune from tort actions under Ohio Rev.Code § 3746.24.

## STANDARD OF REVIEW

Summary judgement must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman*

*Kodak Co. v. Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### A. Employer Intentional Tort Claim.

■ Because Ohio's workers' compensation program grants employers immunity from employee lawsuits except in cases where the employer has committed an intentional tort, plaintiff must establish that defendant committed an intentional tort to maintain his claim. *Brady v. Safety–Kleen Corp.,* 61 Ohio St.3d 624, 631, 576 N.E.2d 722 (1991) (*citing Jones v. VIP Dev. Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984) ("receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort.")).

■ To maintain an intentional tort action against his or her employer, a plaintiff must show:

1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and

3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno's, Inc.,* 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991) (syllabus); *see also Johnson v. BP Chemicals, Inc.,* 85 Ohio St.3d 298, 707 N.E.2d 1107 (1999) (holding unconstitutional Ohio legislation superseding the decision in *Fyffe* ).

■■■ The employee must present "proof beyond that required to prove negligence and beyond that to prove recklessness." *Fyffe,* 59 Ohio St.3d at 115, 570 N.E.2d 1108. Intent means that "the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition." *Id.* If this is the case, and the employer still proceeds, "he is treated by the law as if he had in fact desired to produce the result . . . . [M]ere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.*

### 1. Whether Defendant Knew of the Existence of Dangerous Conditions

■■ Plaintiff's allegations, if credited by the jury, establish that defendant knew that the City of Toledo had once used the project site as an unregulated municipal dump and that deposits of toxic and harmful solid waste were to be found at the site. Moreover, a jury could find that Burkett, Hull's project manager, knew that harmful chemicals had been detected at the site the day before plaintiff was sent there to observe and document the removal and remediation activities. Therefore, a jury could find that plaintiff has established that defendant had knowledge of the existence of a dangerous condition at the site.

### 2. Whether Defendant Knew That if Plaintiff was Exposed to the Dangerous Conditions, Harm was Substantially Certain to Occur

Plaintiff does not deny that defendant required all its employees, including plaintiff, to participate in training sessions de-signed to familiarize employees with personal protective equipment. Defendant's general policy favored use of safety equipment when necessary and required plaintiff to understand how to use such equipment.

Defendant claims that its actions in the instant case were consistent with its safety policies and that it did not know plaintiff would need protective equipment. Defendant's account of the facts, however, is not material to this analysis. Plaintiff alleges, and I believe a jury could find, that defendant knew toxic waste chemicals were present at the project site, but did not provide plaintiff with appropriate protective equipment or warn plaintiff that protective equipment would be necessary.

The question, then, is whether defendant's alleged failure to provide protective equipment made plaintiff's injuries substantially certain to occur when he arrived at the project site without a respirator or other equipment. A finding of intent for the purposes of this claim, of course, requires more than that defendant knew of the risk and reacted recklessly or negligently to that risk. To prevail, plaintiff must convince the jury that defendant's actions so disregarded plaintiff's safety as to warrant treatment by the law as though defendant "desired to produce the result." *Fyffe,* 59 Ohio St.3d at syllabus, ¶ 1.

If the jury credits plaintiff's evidence, it could find that defendant knew that plaintiff's injuries were substantially certain to occur, given defendant's alleged knowledge of the dangerous conditions at the project site and the defendant's acknowledged awareness of the risks associated with exposure to toxic chemicals without proper protective equipment.

I conclude, therefore, that a jury could find that defendant's actions gave rise to a substantial certainty that plaintiff would be

harmed by the known dangerous conditions at the project site.

### 3. Whether Defendant Acted to Require Plaintiff to Work in Dangerous Conditions

Defendant alleges that plaintiff had a choice about whether to work over the weekend at the project site at issue. If true, however, this fact does not vitiate defendant's liability for intentional tort under the third of the *Fyffe* factors. Regardless of whether plaintiff could have chosen not to work over the weekend at the project site, he was not able to make an informed decision about whether to work in dangerous conditions because the defendant did not inform him about the likely presence of such conditions. Plaintiff alleges that when he asked Burkett whether he would need protective equipment, Burkett answered no, without telling the plaintiff that toxic chemicals had been discovered at the site or that the site had once been a municipal dump at which toxic waste had been disposed.

If the jury credits plaintiff's evidence, it could find that defendant acted to require plaintiff to work in known dangerous conditions. Plaintiff alleges that he did not know he was going to be exposed to harmful chemicals, and that defendant sent him to work at the site without informing him of the risks he was undertaking and without providing him with basic equipment that would have protected him from harm.

Defendant also argues that plaintiff could have returned to Hull to obtain a proper respirator once he detected fumes at the project site, but failed to do so, and therefore cannot claim that he was required to be exposed to the dangerous conditions. The allegation that plaintiff failed to take action to reduce the effects of the harm to which he was exposed, however, does not negate the acts plaintiff alleges defendant took when it sent plaintiff to the project site. Plaintiff's allega-

tions suffice to raise a genuine issue of material fact as to whether defendant required plaintiff to be present at a site where dangerous conditions were known to be present and where harm to plaintiff was substantially certain.

Thus, defendant' motion for summary judgment on the employer intentional tort claim will be denied.

### B. Dual Capacity Claim

Plaintiff claims that defendant is also liable to him for his injuries from toxic fumes at the project site because defendant failed to protect him, as a member of the general public, from harm caused by its project. Plaintiff alleges that defendant is liable to plaintiff, therefore, under the "dual-capacity" doctrine adopted by the Ohio Supreme Court as an exception to employers' immunity from tort lawsuits under the worker's compensation system.

■ Under the dual-capacity doctrine, " 'an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.' " *Freese v. Consolidated Rail Corp.*, 4 Ohio St.3d 5, 8, 445 N.E.2d 1110 (1983) (quoting 2 *Larson's Workmen's Compensation Law*, § 72.80 (Desk Ed.1982)).

The dual-capacity doctrine was first adopted in Ohio in *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978). In *Guy*, the plaintiff, a laboratory technician, filed an action to recover from her employer, a hospital. The plaintiff, who contracted mercury poisoning in the course of her employment, alleged that she had been injured by the medical malpractice of the defendant hospital while confined there as a patient for treatment. *Id.* at 184–85, 378 N.E.2d 488.

In reaching its decision that the employer acted in a dual capacity, the Ohio Supreme Court held that "the decisive test of dual-capacity is not how separate the employer's second function is from the first, but whether the second function generates obligations unrelated to those flowing from the first, that of an employer." *Id.* at 188, 378 N.E.2d 488 (citing 2A *Larson's Workmen's Compensation Law,* § 72.80 at 14–117 (1976)). Thus, because the defendant hospital had obligations toward the plaintiff unrelated to and independent of those imposed upon it as an employer, the court determined that plaintiff's action was not barred by worker's compensation laws. *Guy,* 55 Ohio St.2d at 186, 378 N.E.2d 488.

Subsequently, in *Freese,* the Ohio Supreme Court reiterated the test articulated in *Guy* :

Whatever the test applied to determine the status of the party claimed to owe an obligation, be it based upon a consideration of whether there exists an unrelated or independent relationship of the parties other than employer and employee, or based upon a test of whether the employment relationship is incidental or predominant, the same result may be reached. In either approach, what must be determined is whether the employer stepped out of his role as such, and had assumed another hat or cloak.

*Freese,* 4 Ohio St.3d at 10–11, 445 N.E.2d 1110.

The Ohio Supreme Court has acknowledged that an employer can play two roles—employer and manufacturer, for example—but both roles can be interrelated. *Schump v. Firestone Tire and Rubber Co.,* 44 Ohio St.3d 148, 152, 541 N.E.2d 1040 (1989). Therefore, an employer could produce a product both for the general public and for its own use. In that case, the employer is liable to an employee under the dual-capacity doctrine only when the employee's use of the employer's product occurs outside the employment relationship. *See id.* at 152–53, 541 N.E.2d 1040 (employer manufactured tires for public consumption and its own company use; when employee was injured as a result of tires furnished to plaintiff solely as an employee, the dual-capacity doctrine did not apply).

■ In this instant case, plaintiff is alleging that defendant owed him a duty not as an employee but as a member of the general public. Plaintiff seems to argue that the fumes at the project site were so harmful that he would have been harmed had he been on the site as an employee or as a public passer-by. Plaintiff, however, has not denied the fact that he was present at the site solely because he was an employee of defendant assigned to work there that day. Defendant's relationship to plaintiff on that day was as his employer. While it may be true that passers-by could have been harmed by the fumes plaintiff alleges injured him, that supposition is not at issue for the purposes of this dual-capacity claim.

■ Defendant also contends that an employer may not be held liable as an owner/occupier of land under a dual-capacity theory. *See Freese,* 4 Ohio St.3d at 11, 445 N.E.2d 1110 ("[A] complying employer is not obligated to his employee as the owner or occupier of land, whether the cause of action is based on the common law obligations of landowners or on safe-place-to-work statutes or so-called structural work acts."). Plaintiff cannot maintain his claim based on defendant's alleged occupation of the project site.

Plaintiff argues in his response to the motion for summary judgment that the defendant, as an intentional tortfeasor, is also liable to plaintiff under the dual-capacity doctrine because an intentional tort is not an act committed within the normal scope of the employment relationship.

This argument is unsupported by law or fact. If well-taken (as I find it is not), this contention would make the dual-capacity doctrine redundant in all employer intentional tort cases.

Thus, defendant's motion for summary judgment as to the dual-capacity claim will be granted.

### C. Ultrahazardous Activity and Negligence Claims

Defendant claims immunity from plaintiff's ultrahazardous activity and negligence claims under the auspices of Ohio Rev.Code § 3746.01 et seq., Ohio's "Voluntary Action Program" statutes. These statutes provide a statutory scheme that encourages landowners and developers to redevelop polluted land.

Defendant alleges that because its conduct in the instant case was undertaken while performing voluntary actions as defined by § 3746.01(O)[1] of the voluntary action program statutes, it is immune from tort liability under § 3746.24(B)[2]. Therefore, defendant argues, summary judgment should be granted as to both of plaintiff's tort claims. Plaintiff argues that defendant is not immune because its actions in the instant case were not properly undertaken pursuant to a "voluntary action" plan as defined by the statute.

Defendant contracted with the City of Toledo in 1997, and again in 1999, to provide contractor oversight and project support for the remediation of hazardous sub-

stances for a large project that included the property at issue in the instant case. It appears from the record that defendant's contract with the City of Toledo was made pursuant to a O.R.C. § 3746.01 et seq. for remediation of property in accordance with an agreement between the City and DaimlerChrysler Corp. The City retained the defendant in 1997 to provide Phase I and Phase II environmental assessment work in accordance with a voluntary action program. (Doc. 41 exh. B, at 1–4). Defendant's 1999 contract with the City provided for a continuation of the work performed under the first contract.[3] (Doc. 41 exh. C, at 1–2, 6–8).

Defendant claims, and plaintiff does not dispute, that defendant's work at the project site in question was undertaken pursuant to its 1999 contract with the City of Toledo. It appears, therefore, that defendant performed its operations pursuant to a voluntary action program plan as defined by § 3746.01 et seq.

Section 3746.24 immunizes a contractor, like the defendant, from a "tort action resulting from the presence of hazardous substances or petroleum at, or the release of hazardous substances from, a property where a voluntary action is being or has been conducted under this chapter and rules adopted under it." Ohio Rev.Code § 3746.24(B). Defendant, therefore, is protected from tort actions arising from its actions undertaken pursuant to its contract

---

1. Revised Code § 3746.01(O) provides that: "[v]oluntary action" means a series of measures that may be undertaken to identify and address potential sources of contamination of property by hazardous substances or petroleum and to establish that the property complies with applicable standards. "Voluntary action" may include, without limitation, a phase I property assessment ..., a phase II property assessment ..., a sampling plan, a remedial plan, or remedial activities followed by the issuance of a no further action letter ....

2. Revised Code § 3746.24 provides immunity from tort actions for persons involved in the implementation of a voluntary action program plan.

3. The 1999 contract, in general, provided for "contractor oversight," "soil sampling," and "project support" for the demolition and remedial excavation of several sites as part of the City's redevelopment of land for a new Jeep manufacturing plant. (Doc. 41 exh. C, at 7–8).

with the City of Toledo. This immunity, however, does not apply when "an action or omission of the person ... constitutes willful or wanton misconduct or intentionally tortious conduct." *Id.*

Defendant does not suggest that § 3746.24 provides immunity against plaintiff's employer intentional tort claim. Even if defendant made such suggestion, that the "intentionally tortious conduct" exception in the statute abrogates immunity for the intentional tort claim. Thus, § 3746.24 does not protect defendant against plaintiff's intentional tort claim.

Defendant is correct, though, that § 3746.24 provides defendant immunity from plaintiff's negligence and ultrahazardous activity claims. A negligence claim requires a breach of a duty to provide some standard of care, and clearly requires a standard of care lower than "willful or wanton misconduct or intentionally tortious conduct."

■■■ Ultrahazardous activities are "lawful activities ... so dangerous that they are permitted only when the actor insures the public against the harmful propensities of them." *Uland v. S.E. Johnson Cos.,* 1998 WL 123086 at *5 (Ohio App. 1998) (citing *Taylor v. City of Cincinnati,* 143 Ohio St. 426, 434–35, 55 N.E.2d 724 (1944)). To determine whether a defendant's conduct constitutes ultrahazardous activity, a court considers

> the existence of a high degree of risk of harm, the likelihood that great harm will occur, the inability to eliminate the risk of harm through the exercise of ordinary care, how common or uncommon the activity is, whether the activity is appropriately conducted in the location where it is found, and the extent to which the activity's value outweighs the dangerous nature of the activity.

*Abraham v. BP Exploration & Oil, Inc.,* 149 Ohio App.3d 471, 478, 778 N.E.2d 48

(2002) (citing *Crawford v. Nat'l Lead Co.,* 784 F.Supp. 439 (S.D.Ohio 1989)).

■■■ A claim for ultrahazardous activity is "analytically identical to that of absolute nuisance." *Chance v. BP Chemicals, Inc.,* No. CV–214618, 1995 WL 143827, at *7 (Ohio App.1995) (citing *Taylor v. City of Cincinnati,* 143 Ohio St. 426, 55 N.E.2d 724 (1944)). "With an absolute nuisance, the wrongful act is either intentional or unlawful and strict liability attaches notwithstanding the absence of fault because of the hazards involved." *Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 421 n. 4, 768 N.E.2d 1136 (2002) (citing *Metzger v. Pennsylvania, Ohio, & Detroit R. Co.,* 146 Ohio St. 406, 66 N.E.2d 203 (1946)). The general purpose of the ultrahazardous activity claim is to impose liability on any entity engaging in ultrahazardous activity, regardless of whether that entity accidentally or intentionally acted to cause harm to others while conducting the ultrahazardous activity.

■■■ I conclude that the tort immunity granted to contractors like defendant by § 3746.24 applies to protect defendant against plaintiff's ultrahazardous activity claim. Section 3746.24 provides broad protection against tort actions resulting from the presence or release of hazardous substances at the site being redeveloped under the voluntary action program. The purpose of the statute—to encourage redevelopment of polluted sites—would be controverted by a holding allowing an ultrahazardous activity claim to go forward against a contractor working to remediate the site in accordance with a voluntary action plan.

Thus, defendant's motion for summary judgment as to plaintiff's ultrahazardous activity and negligence claims will be granted.

## D. Punitive Damages Claim

 Defendant requests summary judgment on plaintiff's request for punitive damages in association with its claims. Punitive damages are designed not to compensate an injured plaintiff, but to punish an offending party and set him up "as an example to others that they might be deterred from similar conduct." *Preston v. Murty,* 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1987) (quoting *Detling v. Chockley,* 70 Ohio St.2d 134, 136, 436 N.E.2d 208 (1982)). The party seeking punitive damages, therefore, must show more than mere negligence: he must establish that the offending party acted with "actual malice." *Preston,* 32 Ohio St.3d at 335, 512 N.E.2d 1174.

The Ohio Supreme Court has explained that actual malice is:

(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In the latter case, before submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.

*Id.* at 336, 512 N.E.2d 1174.

For now, I defer determination of plaintiff's demand for and defendant's opposition to a punitive damage claim. That issue may be raised at the close of trial, once the evidence is in. The instant motion for summary judgment as to that issue will be denied, without prejudice.

## CONCLUSION

In light of the foregoing, it is

ORDERED THAT

1) Defendant's motion for summary judgment as to the employer intentional tort be, and hereby is, denied;

2) Defendant's motion for summary judgment as to the dual capacity claim be, and hereby is, granted;

3) Defendant's motion for summary judgment as to plaintiff's ultrahazardous activity and negligence claims be, and hereby is, granted;

4) Defendant's motion for summary judgment as to plaintiff's request for punitive damages be, and hereby is, denied, without prejudice.

So ordered.