[Cite as *Rivers v. Otis Elevator*, 2013-Ohio-3917.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99365**

# DOROTHY RIVERS, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# OTIS ELEVATOR, ET AL.

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-747945

**BEFORE:** E.T. Gallagher, J., Keough, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 12, 2013

**ATTORNEYS FOR APPELLANTS**

Bruce D. Taubman
Brian Taubman
Taubman Law
55 Public Square
Suite 1670
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

William H. Falin
Seamus J. McMahon
Moscarino & Treu, L.L.P.
The Hanna Building
1422 Euclid Avenue, Suite 630
Cleveland, Ohio 44115

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiffs-appellants, Dorothy ("Dorothy") and Thomas ("Thomas") Rivers (collectively referred to as "appellants"), appeal from a summary judgment granted in favor of defendant-appellee Marymount Hospital ("Marymount"). We find no merit to the appeal and affirm.

{¶2} Appellants filed suit to recover damages they sustained when Dorothy tripped and fell while stepping onto elevator number six ("the elevator") at Marymount, where Dorothy was employed as a housekeeper. On the day of the incident, Dorothy came to work as usual and punched the time clock at 7:00 a.m. to begin her shift. At 9:45 a.m., Dorothy pushed a hallway button to call for an elevator to go from the fourth floor to the first floor cafeteria for her 15 minute break. As Dorothy began to enter the elevator, she tripped and fell into the elevator and sustained injuries to her hand, knee, and neck. Dorothy testified at deposition that after she fell, she noticed that the bottom of the elevator was not level with the floor.

{¶3} Dorothy pursued a workers' compensation claim for her injuries. She completed and signed an Ohio Bureau of Workers' Compensation ("BWC") "First Report of an Injury, Occupational Disease or Death," form, acknowledging that she sustained her injuries while in the course and scope of her employment. Marymount certified Dorothy's workers' compensation claim to the BWC for administration, and Marymount paid Dorothy a total of $61,527.42 in workers' compensation benefits.

**{¶4}** In the complaint, appellants alleged that Otis Elevator and Marymount negligently failed to maintain the elevator in a safe condition. They also alleged that Dorothy's receipt of workers' compensation benefits did not bar her negligence claim against Marymount because, at the time of her fall, Marymount was acting in a "dual-capacity" as both employer and non-employer. Thomas sought recovery based on a derivative claim for the loss of his wife's "society, comfort, companionship, and consortium."

**{¶5}** Appellants settled their claims against Otis Elevator for $15,000 and subsequently amended their complaint to assert an employer intentional tort claim against Marymount. Marymount answered the complaint and filed a counterclaim for subrogation seeking recovery of the full amount of the workers' compensation benefits it paid to appellants. Marymount alleged that appellants failed to provide Marymount with prior notice of their settlement with Otis Elevator.

**{¶6}** The trial court granted summary judgment in favor of Marymount on all of appellants' claims. It also granted summary judgment in favor of Marymount on its counterclaim for subrogation. The trial court entered judgment in favor of Marymount in the amount of $61,527.42. Appellants now appeal and raise five assignments of error.

### Standard of Review

**{¶7}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential element of the case with evidence of

the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates that she is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. *See* Civ.R. 56(E).

{¶8} Civ.R. 56(C), provides that summary judgment is appropriate when, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

## Dual-capacity Doctrine

{¶9} In their first assignment of error, appellants argue the trial court erroneously found the dual-capacity doctrine inapplicable. They contend that Marymount acted simultaneously as Dorothy's employer and as a "non-employer" when it allowed Dorothy to use a general public elevator.

{¶10} Under Ohio law, employers who comply with the Workers' Compensation Act are granted immunity from civil liability for unintentional employment-related injuries. In relevant part, R.C. 4123.74 states: "Employers who comply with Section 4123.35 of the Revised Code shall not be liable to respond to damages at common law or by statute for any injury * * * received or contracted by any employee in the course of or arising out of his employment."

{¶11} However, an employer's immunity from liability to its employees under the workers' compensation scheme may not apply if the employer occupies a second persona or capacity in relation to the employer. *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d

183, 378 N.E.2d 488 (1978). In *Guy*, the Ohio Supreme Court held that a hospital employee could maintain a medical malpractice action against the hospital notwithstanding the immunity from civil liability provided by the workers' compensation system. The court reasoned that by providing medical treatment to the employee, the employer-hospital assumed traditional obligations attendant to a hospital-patient relationship, which are "unrelated to and independent of those imposed upon it as an employer." *Id*. at syllabus.

{¶12} The Ohio Supreme Court subsequently refined the dual-capacity doctrine in *Freese v. Consol. Rail Corp.*, 4 Ohio St.3d 5, 445 N.E.2d 1110 (1983), *Bakonyi v. Ralston Purina Co.*, 17 Ohio St.3d 154, 478 N.E.2d 241 (1985), and *Schump v. Firestone Tire & Rubber Co.*, 44 Ohio St.3d 148, 150, 541 N.E.2d 1040 (1989). In *Freese*, the court held that the dual-capacity doctrine was unavailable to a police officer who was injured while riding a motorcycle on city streets during the course and scope of his employment. The court concluded that the city's statutory duty to keep its streets clear and free of nuisance did not "generate obligations to this employee independent of and unrelated to the city's obligations as an employer." *Id*. at 11.

{¶13} In *Bakonyi*, an employee was injured while working in a greenhouse when liquid fertilizer was sprayed in his eyes. The employer had purchased the liquid fertilizer for use in its own greenhouse operations as well as for sale to the public. The employee argued the dual-capacity doctrine should apply because the employer was engaged in the public sale of the fertilizer. The court rejected the employee's argument, explaining:

> The [employer] was not a manufacturer of a product for public sale but
> rather was both a consumer and distributor. As such, the two purposes of

[the employer's] use of the product had differing obligations attached to them. The appellant was injured by the employment use, not the public sale use. As we observed in *Freese*, supra, at 11: "* * * [W]hat must be determined is whether the employer stepped out of his role as such, and assumed another hat or cloak. If the facts would show the latter, the employer has accordingly assumed another capacity and also has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship." In this case, we find that [employer] had not assumed another capacity to the appellant and that the employment relationship predominated.

*Bakonyi* at 157.

{¶14} In *Schump*, the employee was injured while operating a truck in the course of his employment, when one of the truck's tires, which was manufactured by the employer, blew out. In determining whether the dual-capacity doctrine applies, the court in *Schump* explained:

The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first, but whether the second function generates obligations unrelated to those flowing from that of the employer. This means that the employer must step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship.

*Schump*, at 152, quoting *Weber v. Armco, Inc.*, 1983 OK 53, 663 P.2d 1221, 1226-1227 (Okla.1983). In other words, the "dual-capacity doctrine" does not apply where the employee seeks "to sue his employer for injuries which are predominately work-related," *id*. at 150.

{¶15} Appellants rely on *Mercer v. Uniroyal, Inc.*, 49 Ohio App.2d 279, 361 N.E.2d 492 (6th Dist.1976), and *Simpkins v. Gen. Motors Corp.*, 3 Ohio App.3d 275, 444 N.E.2d 1064 (2d Dist.1981), in support of their argument. In *Mercer*, the Sixth District

Court of Appeals held that where a hazard is not necessarily one of employment but is one common the public in general, there is no causal connection between the employment and the injury, and the Workmen's Compensation Law of Ohio is not a bar from recovering from that employer. *Id*. at 285-286. In *Simpkins,* the Second District Court of Appeals, relying on *Mercer*, found that the injured employee could not recover under the dual-capacity doctrine because he was injured by a hoist that was only used by employees and was not available to the public. *Simpkin*s at 277.

{¶16} However, the Ohio Supreme Court's decision in *Schump* implicitly overruled *Mercer* and *Simpkins*. The court noted that the facts in *Schump* were "strikingly similar" to the facts of *Mercer*. It nevertheless decided not to adopt the holding in *Mercer*, explaining that *Mercer* "represent[s] a view without support in any other state aside from California." *Schump* at 151. Furthermore, the Ohio Supreme Court's decisions in *Freese*, *Bakonyi*, and *Schump* direct us to look at the employer's role in relation to the employee rather than just the employee's status in relation to the public.

{¶17} Here, Dorothy testified at deposition that she was at Marymount solely for purposes of work, and she was still "on the clock" at the time of the accident. She admitted that although the elevator was available to the public, Marymount employees use the elevator "all the time" as "part of their work." There was no evidence that Marymount assumed any other persona besides that of employer with respect to Dorothy, nor do appellants identify any other role Marymount played other than that of a nondescript "non-employer." Unlike *Guy*, Marymount did not assume the traditional role of hospital to treat Dorothy as a patient nor was Dorothy a visitor of the hospital.

The undisputed evidence demonstrates that Dorothy's injuries resulted from her "employment use" of the elevator, and her injuries are "predominately work-related." Therefore, the dual-capacity doctrine was inapplicable.

**{¶18}** The first assignment of error is overruled.

### Employer Intentional Tort

**{¶19}** In the second assignment of error, appellants argue the trial court erred in granting summary judgment to Marymount on her employer intentional tort claim when there was evidence that Marymount deliberately intended to injure her. In the third assignment of error, Dorothy argues the trial court erred in granting summary judgment to Marymount where there was evidence that Marymount deliberately removed a safety guard. We discuss these assigned errors together because they are closely related.

**{¶20}** As previously stated, employees are generally limited to the remedy provided under the Workers' Compensation Act for injuries sustained in the workplace. R.C. 4123.74. However, R.C. 2745.01(A) provides a limited exception for employer intentional torts, and states:

> In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

For the purposes of this statute, the term "'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B).

**{¶21}** In *Stetter v. R.J. Corman Detailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, the Ohio Supreme Court stated that by enacting R.C. 2745.01, particularly 2745.01(B), the Ohio General Assembly meant to "significantly curtail an employee's access to common-law damages" and "permit recovery for employer intentional torts only when an employer acts with specific intent to cause injury." *Id.* at ¶ 24. Therefore, absent a deliberate intent to injure an employee, the employer is not liable for employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system. *Houdek v. Thyssenkrupp Materials N.A., Inc.,* 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 23-25.

**{¶22}** Appellants argue Marymount is liable for an intentional tort because "it knew or should have known that the elevator was not working properly" and "elected to continue to operate the elevator instead of shutting it down." Dorothy submitted an affidavit in support of her brief in opposition to Marymount's motion for summary judgment in which she states: "Marymount knew that the elevator wasn't operating properly on the day of her injury but elected to keep it in operation."

**{¶23}** Dorothy later contradicted her affidavit testimony at deposition when she testified she did not know of any prior problems with the elevator and that no one ever told her of any problems before the injury occurred. If an unexplained conflict exists between a nonmoving party's affidavit and deposition testimony, a trial court must disregard the conflicting statements in the party's affidavit when deciding a motion for summary judgment. *Zitron v. Sweep-A-Lot*, 10th Dist. Franklin No. 09AP-1110, 2010-Ohio-2733, ¶ 27. A nonmoving party cannot avoid summary judgment by

submitting an uncorroborated and self-serving affidavit that contradicts the party's deposition testimony. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 47. *See also Davis v. Cleveland*, 8th Dist. Cuyahoga No. 83665, 2004-Ohio-6621, ¶ 23. Therefore, Dorothy's affidavit testimony fails to create a genuine issue of material fact as to Marymount's knowledge and intent with respect to the elevator's operation.

{¶24} Furthermore, Leonard Quinn ("Quinn"), who worked in Marymount's maintenance department, testified that complaints about the elevators come through the maintenance department. According to Quinn, no one reported any problems with the elevator, and he was not aware of any problems with the elevator the day Dorothy fell. Although there had been a problem with one of the elevators a day or two before the incident, Quinn testified that Otis Elevator repaired it, and personnel in the maintenance department believed the elevators were working properly on the morning Dorothy was injured.

{¶25} Appellants also argue that Marymount's refusal to shut down the elevator amounted to a deliberate removal of a safety guard. Although R.C. 2945.01 requires specific or deliberate intent to cause injury in order to recover on an employer intentional tort claim, R.C. 2745.01(C) establishes a rebuttable presumption that the employer intended to injure the worker if the employer deliberately removes a safety guard. *Houdek*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 12.

{¶26} In *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, the Ohio Supreme Court clarified the meaning of an "equipment safety guard," and defined it as "a device designed to shield the operator from exposure to or

injury by a dangerous aspect of the equipment." *Id*. at syllabus. The court rejected any more expansive interpretation that might include "any generic safety-related item" or something besides a safety guard attached to machinery. *Id*. at ¶ 22, 24. Indeed, the Ohio Supreme Court explained: "To construe 'equipment safety guard' to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts." Decisions when to shut down a public elevator do not fall within the limited definition of an "equipment safety guard." Therefore, there is no presumption that Marymount intended to injure Dorothy.

{¶27} Despite appellants' statements to the contrary, there is no evidence that Marymount made a deliberate decision to keep the elevator in operation knowing that it was dangerous. Therefore, there is no evidence that Marymount intentionally harmed Dorothy.

{¶28} The second and third assignments of error are overruled.

## Loss of Consortium

{¶29} In the fourth assignment of error, appellants argue the trial court erred in dismissing Thomas's loss of consortium claim. A loss of consortium claim is a derivative cause of action dependent upon the viability of the primary cause of action. *Tourlakis v. Beverage Distribs*., 8th Dist. Cuyahoga No. 81222, 2002-Ohio-7252, citing *Lynn v. Allied Corp.*, 41 Ohio App.3d 392, 402, 536 N.E.2d 25 (8th Dist.1987). Since Dorothy failed to prove any of her claims against Marymount, Thomas's loss of consortium claim must also fail.

**{¶30}** The fourth assignment of error is overruled.

## Subrogation

**{¶31}** In the fifth assignment of error, appellants argue the trial court erred in granting judgment in favor of Marymount on its counterclaim for subrogation against Dorothy in the amount of $61,527.42. They contend the judgment should have been limited to the $15,000 it received from Otis Elevator.

**{¶32}** R.C. 4123.931 provides a self-insured employer, who pays workers' compensation benefits to an injured employee, a statutory right of subrogation against any third party who is or may be liable to the claimant for damages sustained during the employee's course and scope of employment. R.C. 4123.931(G), requires that a claimant provide prior notice to a statutory subrogee of all third parties against whom the claimant has or may have a right to recover. The statute further provides that "[n]o settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee * * * with prior notice and a reasonable opportunity to assert its subrogation rights." Most importantly, the statute states:

> If a statutory subrogee * * * [is] not given notice, or if a settlement or compromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.

Thus, although the employer's right to subrogated recovery is generally limited to the "net amount" of the employee's recovery from the third party, R.C. 4123.931 expressly provides that the employee and third party are jointly and severally liable to the employer

for the "full amount" of the employer's "subrogated interest," if the employee settles her claim against the third party

without providing prior notice to the employer. *Bur. of Workers' Comp. v. Williams,* 180 Ohio App.3d 239, 2008-Ohio-6685, 905 N.E.2d 201, ¶ 13-16 (10th Dist.).

**{¶33}** It is undisputed that, (1) Marymount is a self-insured employer; (2) Marymount paid $61,527.42 to Dorothy for her work-related injuries; (3) Dorothy settled her claims against Otis Elevator, a third party; and (4) Dorothy failed to provide Marymount with the statutorily required notice of that settlement. Nevertheless, appellants contend Marymount was not entitled to recover the $61,527.42 because it is not a "statutory subrogee," and, in any event, Marymount is barred from recovery by the doctrine of unclean hands.

**{¶34}** Appellants assert that Marymount is not a "statutory subrogee" but rather a "third party" based on its alleged "dual-capacity" or "intentional tort" liability. However, as previously discussed, Marymount has no liability to Dorothy under either the "dual-capacity" doctrine or the employer intentional tort statute. Furthermore, R.C. 4123.93 defines "statutory subrogee" as, inter alia, "a self-insured employer." Because it is undisputed that Marymount is a self-insured employer that paid Dorothy workers' compensation benefits for her work-related injury, Marymount is a "statutory subrogee" entitled to prior notice of Dorothy's settlement with Otis Elevator.

**{¶35}** Appellants also argue that Marymount is barred from recovering its subrogation interest by the doctrine of unclean hands. However, the clean hands doctrine is a defense against claims in equity. *Emery Woods Acquisition, L.L.C. v. Stanley*, 8th

Dist. Cuyahoga No. 93706, 2010-Ohio-3421, ¶ 26. The doctrine does not apply where a party is not attempting to invoke the equitable powers of the court. *Jamestown Village Condominium Owners Assn. v. Market Media Research, Inc.,* 96 Ohio App.3d 678, 688, 645 N.E.2d 1265 (8th Dist.1994). Marymount's claim for recovery is based on its statutory right to subrogation. It is not an equitable claim. Therefore, the doctrine of unclean hands is inapplicable to the facts of this case.

{¶36} Marymount is entitled to recover the full amount of the $61,527.42 it paid to Dorothy. R.C. 4123.931(G) unequivocally states that, if the statutory subrogee is not given prior notice of a settlement with a third party, "the third party and the claimant [are] jointly and severally liable to pay the statutory subrogee the *full amount* of the subrogation interest." (Emphasis added.) Appellants assert that Marymount's recovery of the entire $61,527.42 is unconscionable and "shocks the conscience." However, as the court stated in *Williams*, if appellants wished to avoid liability for all or part of [Marymount's] subrogation interest, they could have done so by following the procedures set forth in R.C. 4123.931. *Williams* at ¶ 16.

{¶37} The fifth assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that Marymount recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR