[Cite as *Robinson v. Quasar Energy Group, L.L.C.*, 2014-Ohio-4218.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 101062

---

# JAMES ROBINSON

### PLAINTIFF-APPELLANT

vs.

# QUASAR ENERGY GROUP LLC, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-801848

**BEFORE:** Rocco, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 25, 2014

**ATTORNEY FOR APPELLANT**

Douglas L. Winston
Berger & Zavesky Co., L.P.A.
1425 Rockefeller Building
614 Superior Avenue, N.W.
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Scott H. Schooler
Forbes Fields & Associates
700 Rockefeller Building
614 Superior Avenue, N.W.
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Plaintiff-appellant James Robinson appeals from the trial court's order granting summary judgment in favor of defendants-appellees Quasar Energy Group, LLC ("Quasar") and Mel Kurtz (collectively, "the defendants"). Robinson asserted that the defendants unlawfully retaliated against Robinson and that he was wrongfully discharged in violation of public policy. Finding no merit to Robinson's arguments on appeal, we affirm the trial court's final judgment.

{¶2} Although the record in this case is lengthy, we recite only those facts that are relevant to our resolution of the case. Because this case involves an appeal from a grant of summary judgment, our recitation of the facts is in the light most favorable to the nonmoving party, Robinson. *See Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶3} Robinson, an African American, was employed by Quasar as a plant operator from September 20, 2011, until Quasar terminated his employment on September 14, 2012. Quasar is an energy company that uses microorganisms to convert organic waste into energy. As a plant operator, Robinson had a variety of responsibilities, including, monitoring the operation of anaerobic digester plant pumps, motors, and other equipment; reading gauges, dials, and other instrumentation; maintaining and updating logs of plant operations; inspecting and cleaning machines and equipment; preparing daily data sheets; preparing reports; maintaining treatment facilities and grounds; and keeping the site clean

and organized. Due to the nature of the job, a plant manager had to be willing to work overtime.

{¶4} Robinson began his training at Quasar's facility in Wooster, where he reported to Clemens Halene, Quasar's Chief Operating Officer. Halene is white and is originally from Germany. On December 20, 2011, Halene sent an email to Quasar's human resources administrator, Maureen DeCicco, stating that Robinson was a "[w]aste of time — he needs to go." Halene testified that he reached this conclusion because, on one occasion, Robinson was unable to receive loads of feedstock.[1]

{¶5} Between November and December 2011, Robinson provided assistance in the construction of Quasar's Collinwood plant in Cleveland. The plant became operational in January 2012, and Robinson became the plant operator at Collinwood. According to Robinson, once the plant became operational, Robinson was not required to obtain pre-clearance before working overtime. In contrast, on October 24, 2011, DeCicco sent a memo to Quasar employees stating that, effective that day, "All overtime MUST be authorized and approved."

{¶6} Robinson testified that over the course of his employment, Halene would call Robinson names like "ignorant" and "stupid" for forgetting to attach a document to an email or for not answering his phone. Robinson also testified that on one occasion, Halene told Robinson, "I don't need you for your brain since you obviously don't have one. I need you for your eyes, your hands, and your feet." Robinson also stated that

---

[1]Feedstock is the organic material that Quasar receives to convert into energy.

although he stuck his hand out to Halene whenever Halene visited the plant, Halene refused to shake Robinson's hand. But Robinson averred that on some of these occasions he observed Halene shaking hands with Robinson's white coworkers. Robinson testified that he believed that Halene's insults about Robinson's lack of intelligence and refusal to shake his hand, were due to the fact that Robinson was black. But Robinson did not share these beliefs with anyone else at Quasar.

{¶7} On June 1, 2012, Cam Rowley became Quasar's operations manager. In this position, Rowley operated the various plants by interfacing with the plant operators and receiving various items from plant operators, including daily reports. At some point prior to August 2, 2012, Robinson talked to Rowley about how Halene had been insulting Robinson. But Robinson did not tell Rowley that he thought Halene's treatment towards him was racially motivated. Rowley told Robinson that he would handle the situation.

{¶8} On August 2, 2012, Halene confronted Robinson over the telephone about a daily report that Robinson had submitted the day prior. Robinson testified that Halene called Robinson a moron, imbecile, and stupid, stating that Robinson did not know how to send emails. Robinson asked Halene if he talked to all his employees this way or was he talking to him like that because he was black. According to Robinson, Halene responded, "I'm German. I'm German. We need to talk to [DeCicco]," and then he hung up the phone.

{¶9} The next day, on August 3, 2012, DeCicco and Rowley met with Robinson to discuss the incident. Robinson testified that during this meeting, he told DeCicco that he

did not think race was a factor in how Halene treated Robinson. Robinson said that he told DeCicco that race was not a factor because he was fearful of losing his job.

{¶10} Robinson testified that after this conversation took place, Quasar president, Mel Kurtz, came to the Collinwood plant, telling Robinson, "I got a bone to pick with you" and "I cannot believe you played the race card." According to Robinson, Kurtz told him that "when I found out that you played the race card, the first thing I said was for them to fire your ass but they told me that I can't fire you, but what I'm going to do is I'm going to cut your overtime but I'm not going to pay you for working slow." Robinson states that he and Kurtz were alone when this conversation took place.

{¶11} DeCicco drafted a memorandum dated August 9, 2012, that was signed by herself, Robinson, Rowley, and Halene. The memorandum memorialized what took place on August 2nd. The memorandum stated that when Halene confronted Robinson on August 2nd about the daily report submitted by Robinson, Robinson explained to Halene that since he was no longer permitted to work overtime, he did not have the time to perform his job functions completely. According to the memorandum, Robinson did not think race was a factor in how Halene treated Robinson, but he did feel that Halene often spoke to him in a demeaning manner. The memorandum stated that, on July 30, 2012, Robinson was given a performance review to complete where both he and Rowley would evaluate Robinson's performance to date. The document was due on August 10, 2012.

{¶12} Robinson avers that subsequent to the incident on August 2nd, Rowley cut Robinson's overtime hours.  Robinson received a termination notice from DeCicco on September 14, 2012.  On February 21, 2013, Robinson filed a complaint against the defendants alleging unlawful retaliation and a discharge in violation of public policy. On November 22, 2013, the defendants filed a motion for summary judgment that the trial court granted on February 3, 2014.

{¶13} Robinson now appeals, setting forth three assignments of error for our review:

> I. The trial court erred in granting summary judgment on Robinson's retaliation claim based upon his discharge as there were triable issues that Robinson engaged in protected activity and that activity was a determinative factor for his termination.
>
> II. The trial court erred in granting summary judgment on Robinson's retaliation claim based upon a reduction of his working hours as appellees never sought summary judgment on this claim.
>
> III. The trial court erred in granting summary judgment on Robinson's public policy claim.

{¶14} Because this case involves an order granting summary judgment, we review the trial court's order de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Under Civ.R. 56(C), summary judgment should be granted if (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary

judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Gilbert*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 6.

{¶15} The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, the court should not grant summary judgment. If the movant does meet its burden, summary judgment is warranted only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

{¶16} The first and second assignments of error are considered together because the analysis involved is the same. In both of these assignments of error Robinson contends that the trial court erred in granting summary judgment on his retaliation claim.

{¶17} Robinson's retaliation claim was brought pursuant to R.C. 4112.02(I), which provides that it is "an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section * * * ."[2] A claimant can prove retaliation through direct evidence or circumstantial evidence. *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 39. If, as is the case here, direct evidence does not exist, the plaintiff must make a prima facie case by establishing that

---

[2]This provision also prohibits retaliation on the basis of "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

(1) []he engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.

*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13. If the plaintiff makes a prima facie case for retaliation, "the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at ¶ 14, quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Assuming the employer can satisfy this burden, the burden then shifts back to the plaintiff "to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

{¶18} Because R.C. Chapter 4112 is Ohio's counterpart to 42 U.S.C. 2000e ("Title VII"), we can apply federal authority to cases involving alleged violations of R.C. Chapter 4112. *Chenevey v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 99063, 2013-Ohio-1902, ¶ 22, fn. 2 (citations omitted).

{¶19} In the Title VII context, the United States Supreme Court set forth that the ordinary meaning of "oppose" is "'to resist or antagonize * * *; to contend against; to confront; resist; withstand,'" or "'to be hostile or adverse to, as in opinion.'" *Crawford v. Metro. Govt. of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009), quoting *Webster's New International Dictionary* 1710 (2d Ed.1958) and *Random House Dictionary of the English Language* 1359 (2d Ed.1987). Quoting from an EEOC guideline, the *Crawford* Court explained that "[w]hen an employee

communicates to her employer a belief that the employer has engaged in * * * a form of employment discrimination, that communication virtually always 'constitutes the employee's *opposition* to the activity.'"   (Emphasis sic.) *Id.* at 276.

{¶20} A claimant may seek protection under the opposition clause regardless of whether the conduct or policy he was opposing was, in fact, unlawful.   The person need "only have a good faith belief that the practice is unlawful."   *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313-1314 (6th Cir. 1989).   But in opposing the practice, the employee must be clear that he views the conduct as discriminatory.   "An employee may not invoke the protections of the Act by making a vague charge of discrimination."   *Id.* at 1313.

{¶21} In the instant case, the trial court concluded, inter alia, that Robinson had failed to demonstrate that he had engaged in a protected activity, and thus, he had not established the first element of his prima facie case.   Robinson argues to this court that he engaged in protected activity when he asked Halene whether he talked to white employees in the same way in which he spoke to Robinson.   The defendants assert that Robinson did not engage in protected activity because his conduct was too vague.   We agree.

{¶22} While Robinson would have us examine his question to Halene in a vacuum, we cannot ignore Robinson's subsequent conduct.   The very next day, when both the human resources administrator and Robinson's supervisor came to Robinson to discuss the matter,   Robinson told them that he did not believe that Halene's conduct towards

him was based on Robinson's race. Robinson also signed a memorandum stating that, although he disapproved of Halene's treatment towards him, he did not believe that the poor treatment was racially motivated. While Robinson asked Halene one question insinuating that Halene spoke down to him because he was black, the evidence demonstrates that Robinson subsequently denied, both orally and in writing, that Halene had engaged in any racial discrimination. Robinson's charge was, at best, vague.

{¶23} Robinson argues that Kurtz's comment to Robinson about playing "the race card" and threatening to cut overtime demonstrates that Robinson's question to Halene was perceived as race based. Although Kurtz's comment could be relevant evidence with respect to other elements of the prima facie case, it is not relevant to the issue of whether Robinson engaged in protected activity. We look at the employee's conduct, not the employer's conduct, in determining whether the employee engaged in a protected activity.[3]

{¶24} On the unique facts of this case, we cannot say that Robinson engaged in activity protected under R.C. 4112.02(I). Because Robinson has failed to make out a prima facie case of retaliation, we overrule the first and second assignments of error.

---

[3]Although not relevant to our decision today, we also note that the timing of the comment leads one to question the meaning behind Kurtz's words. Kurtz did not confront Robinson until *after* Robinson told DeCicco and Rowley that Halene's comments were not racially motivated. It logically follows that Kurtz was angry at Robinson, not for questioning whether Halene was racist, but, rather, for falsely accusing Halene of racism.

{¶25} In his third assignment of error, Robinson argues that the trial court erred in granting summary judgment on Robinson's public policy claim. Finding no merit to Robinson's argument, we overrule the assignment of error.

{¶26} To establish a claim for wrongful discharge based on public policy, a claimant must show:

> 1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); 2) That his dismissal jeopardized the public policy (the jeopardy element); 3) His dismissal was motivated by conduct related to the public policy (the causation element); and 4) The [employer] lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Alexander v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 95727, 2012-Ohio-1737, ¶ 22. Robinson asserts that Quasar wrongfully discharged him from employment because he told DeCicco and Rowley during the August 3, 2012 meeting that he planned to consult an attorney. In granting summary judgment to the defendants on this claim, the trial court determined that the allegation was "based solely on speculation and not upon any evidence whatsoever."

{¶27} "A nonmoving party cannot avoid summary judgment by submitting an uncorroborated and self-serving affidavit that contradicts the party's deposition testimony." *Rivers v. Otis Elevator*, 8th Dist. Cuyahoga No. 99365, 2013-Ohio-3917, ¶ 23. "'If an unexplained conflict exists between a nonmoving party's affidavit and deposition testimony, a trial court must disregard the conflicting statements in the party's

affidavit when deciding a motion for summary judgment.'" *Id.*, quoting *Zitron v. Sweep-A-Lot*, 10th Dist. Franklin No. 09AP-1110, 2010-Ohio-2733, ¶ 27.

**{¶28}**  Robinson was asked in his deposition to explain what took place at the August 3, 2012 meeting.  Robinson testified in detail about what transpired at this meeting, but he made no mention in his deposition that he told DeCicco and Rowley that he intended to obtain legal counsel.   There is also no mention in the August 9th memo that Robinson had told DeCicco and Rowley that he would hire an attorney.   After Robinson's deposition, he submitted an affidavit stating that he told DeCicco and Rowley that he would obtain counsel.

**{¶29}** Robinson does not explain this conflict between his deposition testimony and his affidavit.   Accordingly, the trial court was correct in disregarding the conflicting statement made in Robinson's affidavit.   Because Robinson has not presented credible evidence that he ever told DeCicco and Rowley that he planned to obtain legal counsel, he cannot establish that his dismissal was motivated by conduct relating to a public policy.   We, therefore, overrule the third assignment of error.   For the aforementioned reasons, we affirm the trial court's final judgment.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR